CRYDER WELL COMPANY (Melvin A. Cryder, proprietor), appellee, v. KENNETH STANGL et al., defendants-appellees.

KENNETH STANGL et ux., cross-petitioners, appellees, v. JOE BROWN et al., defendants to cross-petition.

JOE BROWN, cross-petitioner, appellant, v. HAROLD BAKER et al., defendants to cross-petition.

No. 51714.

(Reported in 136 N.W.2d 519)

JULY 29, 1965.

Albert Habhab, of Fort Dodge, for appellant.

Robert Culver, of Emmetsburg, for appellees Harold Baker and LaVone Baker.

Austin Hogan and Alan Loth, both of Fort Dodge, for appellee Cryder Well Company.

Leslie A. Prichard, of Emmetsburg, for appellees Kenneth Stangl, Margaret Stangl, Palo Alto County State Bank and Prudential Insurance Company of America.

STUART, J.—Although this is an action in equity to foreclose a mechanic's lien, the main controversy on appeal is between defendants, Bakers and Brown. Plaintiff drilled a well on a farm which was involved in a conditional contract exchanging it for a motel. We must determine who is responsible for the payment of the cost of drilling the well.

Bakers owned two quarter sections of land in Palo Alto County. In July 1961 they listed the farm for sale or trade with Brown, a realtor. In a contract dated December 14, 1963, the farm and cash were exchanged for a motel in Brookfield, Missouri, owned by Litkes, Steinkes and Zielkes, who will be referred to as Litkes. Under the terms of the contract, the farm was valued at $128,000 and the motel at $220,000. Bakers were to pay the cash difference. The contract was contingent upon two

conditions. One was the ability of Bakers to get a loan of $110,000. The loan was obtained and this condition is not involved. Second, the agreement was made dependent upon the Litkes being able to sell the farm for $400 per acre, within 15 days.

The explanation offered by Brown for these provisions is that Bakers wanted the tax advantages of an exchange of properties and Litkes did not want to be stuck with the ownership of the farm. Within the 15 days the east quarter was sold by Brown for $450 per acre and is not herein involved. Also within the 15 days an offer to purchase the west quarter for $350 was accepted by Litkes. Brown claims the named purchaser, Mr. Semprini, was a "strawman" set up to assure the condition of sale within 15 days was satisfied. There is evidence Brown was also listed as a purchaser on this contract. It is not claimed Bakers had anything to do with this arrangement.

Early in March 1962 Baker told his friend, Stangl, the west quarter was listed with Brown for sale. The farm was shown and on March 10, 1962, Mr. Semprini accepted Stangls' offer to purchase the 160 acres for $52,000 or $325 per acre, upon the condition that the seller complete a well to produce a certain minimum amount of water per hour. This condition was typed on the back of the contract and was signed by Stangls and "Joseph E. Brown".

Brown had previously contacted an agent for plaintiff and it had been determined the existing well could not be cleaned. Brown testified it was agreed the cost of a new well would be $800 to $1100. Plaintiff's agent said this cost figure was on the assumption that water could be obtained at the same depth as a well on the east quarter. It was however necessary to dig two holes to a much greater depth at a total cost of $3400 before good water in a sufficient quantity was obtained. On May 7, 1962, Bakers conveyed the farm to the Litkes who then conveyed it directly to Stangls.

Brown paid plaintiff $500 and since no one else paid the balance this suit was brought. As Brown had represented to plaintiff he was acting for Baker at all times during the transaction, the original defendants were Bakers, Litkes, Stangls and

**1258**

their mortgagees. Bakers attempted to get out of the case on a special appearance challenging the service of notice which was overruled. Stangls answered and filed a cross-petition against Brown, Bakers and Litkes. Brown answered alleging he was an agent for Bakers and cross-petitioned against Bakers and Litkes for the $500 payment made by him on the well. Litkes did not appear and default was entered against them.

The trial court confirmed and established the lien in favor of plaintiff and rendered judgment in its favor. Stangls were awarded judgment against Brown on the theory that he entered into the contract for the well as one of the owners. Brown appealed. We affirm.

I. All parties agree Stangls purchased the farm on the condition that a well meeting the minimum requirements be completed. Questions involving the sufficiency of the well were resolved in the lower court against Stangls and they have not appealed. Since the lien was established against their property, they are entitled to have judgment over against either Bakers or Brown, depending upon which one was obligated to furnish the well.

II. Brown claims the amount of recovery and the lien should be limited to $1100. The trial court found there was no limit on the cost and we agree that plaintiff established a debt and a mechanic's lien in the amount shown in the judgment.

III. This is primarily a question of fact. No novel propositions of law are involved. An agent acting within the scope of authority for a fully disclosed principal is not personally liable to a contracting third party. Alsco Iowa Inc. v. Jackson, 254 Iowa 837, 839, 118 N.W.2d 565. An agent apparently acting "in a representative capacity, but actually with no authority from his purported principal, or in excess of an existent authority, is personally liable to the other contracting party who has acted in good faith and in reliance on the false representations, unless the principal is estopped to deny his authority." Miller v. Hartford Fire Ins. Co., 251 Iowa 665, 674, 102 N.W.2d 368, quoting from 3 C. J. S. 114, Agency, section 208.

Bakers and Brown are in sharp disagreement over their

obligations and position. Brown claims Baker was informed of all developments and was advised that a new well was required. He testified Baker told him to go ahead and get it taken care of, which he understood authorized him to have a well drilled at Bakers' expense.

Baker testified Brown showed him the contract between Litkes and Semprini in February. "Semprini and Brown had signed it. Brown told me that they were buying it and that there was nothing more to worry about." He denied Brown discussed the cost of the well with him. "Brown said he would like to clean the well and I told him as long as he was paying for it he could do it, but I was not putting out one penny for it. This was after he showed me Semprini's contract but before he showed me Stangls' contract."

It is difficult to understand how Bakers could be held for the cost of the well. They signed only the contract with Litkes. There was no agreement there to furnish good water to the west quarter. The Litke-Semprini contract did not contain such condition. It first appears in the Semprini-Stangl contract.

Brown's claim he was acting as Bakers' agent throughout presupposes some obligation on Bakers' part to procure an ultimate purchaser other than Semprini. We do not believe the evidence supports such a contention. Although it might have been to Bakers' advantage to aid Brown in securing a purchaser from Litkes to satisfy the condition in the contract, there was no obligation to do so. It is not even contended Bakers had any obligations under the Litke-Semprini "strawman" contract. As far as Bakers were concerned, the trade was consummated at that time.

Brown apparently procured this contract to complete the trade. There is evidence he was one of the purchasers. Baker testified Brown's name was on the contract. He arranged for a farm management contract prior to the sale to Stangls and paid the charges made when the contract was canceled after the sale. Although he did not sign the Semprini-Stangl contract, he did, in his own name, sign the condition requiring good water. He also paid plaintiff $500 on the cost of the well.

The Semprini-Stangl contract was for $25 an acre less than the Litke-Semprini contract. So far as the record shows Litkes

1260

received the full amount due. The $25 loss must have been absorbed by Brown as he states Semprini was a "strawman" and no claim is made that Bakers were obligated to stand the loss. The record is utterly void of any evidence of an agreement by Bakers to do anything after the contract with Litkes was signed. Brown bases his authority on a rather indefinite statement he understood authorized him to drill the well at Bakers' expense, which Bakers specifically denied. In the absence of a showing that Bakers had some responsibility beyond the written contracts, it is difficult to understand why they should agree to stand the cost of the well.

It is reasonable to assume that Brown engaged in these maneuvers to make his large commission on the trade of these properties secure and became one of the owners of the equitable title under the Litke-Semprini contract.

IV. Brown contended Stangls were not entitled to judgment over against him because they "knew" Brown was acting as agent for Bakers. Since we have held Brown was acting for himself, rather than Bakers, there is no merit in this contention.

This case is therefore affirmed.—Affirmed.

All JUSTICES concur except MASON and RAWLINGS, JJ., who take no part.