IN the MATTER OF LIQUIDATION OF WMBIC INDEMNITY
CORPORATION:

FARMERS SAVINGS BANK, Claimant-Appellant,†

v.

WMBIC INDEMNITY CORP., Respondent.

Court of Appeals

*No. 91-2727. Oral argument October 15, 1992.—Decided
March 18, 1993.*

(Also reported in 499 N.W.2d 257.)

† Petition to review denied.

For the claimant-appellant the cause was orally argued by *Kent I. Carnell* and submitted on the briefs of *Dan D. Gartzke* and *Kent I. Carnell* of *Lawton & Cates* of Madison.

For the respondent the cause was orally argued by *John A. Casey* and submitted on the brief of *Susan LaCava, Jeffrey B. Bartell, John A. Casey* and *William J. Toman* of *Quarles & Brady* of Milwaukee.

Before Eich, C.J., Sundby and Anderson, JJ.

EICH, C.J.    The Farmers Savings Bank of Mitchellville, Iowa, appeals from a summary judgment upholding the decision of the liquidator of the WMBIC Indemnity Insurance Company to deny the bank's claim for reimbursement under a WMBIC "directors and officers" ("D&O") policy.[1]

The bank and two of its officers, George Ballard and Robert Chittenden, were sued by a customer, Richard Myers and his wife Kathryn (hereafter the singular "Myers"), who asserted a variety of contract and tort claims stemming from their dealings with the two men. The defendants eventually settled the action without conceding liability and the bank, which had underwrit-

---

[1] The policy upon which the action is based was issued by WMBIC's predecessor, MGIC Indemnity Corporation. To avoid confusion, we will refer to WMBIC as the insurer.

ten the legal fees for Ballard and Chittenden, and had paid the settlement, sought reimbursement for those expenditures under the WMBIC policy. By that time, WMBIC had been placed in liquidation under Wisconsin law and the liquidator denied the bank's claim.

The bank and the liquidator agreed to submit the matter to the trial court, acting as the liquidation court for all claims against WMBIC, on joint motions for summary judgment. The court granted the liquidator's motion and dismissed the action.

While the parties raise several issues, we consider one to be dispositive: did the WMBIC policy cover Myers' claims against the officers? We agree with the trial court that it did not, and we affirm the judgment.

The facts are not in dispute. Myers' complaint[2] alleged that he had taken out a long-term loan from the Mutual Benefit Life Insurance Company at the bank's suggestion as a means of reducing the level of his debt at the bank, and that Ballard told him that when the interest payment on the Mutual Benefit loan came due, the bank would loan him funds to pay it. According to Myers, he wrote a check for the interest payment in reliance on Ballard's representations and that despite the fact that the bank had honored his checks in the past, it refused to do so in this case, causing him to default on the Mutual Benefit loan.

Based on those facts, Myers sued the bank and its officers, asserting several claims: (1) that the bank breached an oral contract to lend him the promised funds; (2) that the several defendants intentionally inflicted severe emotional distress upon him; (3) that the representations made by Chittenden and Ballard consti-

---

[2] Technically, the document filed by Myers in the Iowa court was a petition, which is equivalent to a complaint under Wisconsin law. For simplicity we will refer to the petition as a complaint.

tuted intentional fraud; and (4) that the bank's acceptance of the borrowed funds constituted "tortious conversion." In each instance—including the claim for breach of contract—Myers sought both compensatory and punitive damages.

Chittenden notified WMBIC of the lawsuit and that he and Ballard were named as defendants. He was informed that, under the terms of the policy, he could select his own counsel and that he should forward the legal papers to the company.

Thereafter Chittenden forwarded a "loss notice" to WMBIC, along with the Myers complaint. WMBIC responded by letter, reserving its rights under the policy, and advising Chittenden of various policy exclusions it felt might be applicable.[3] At about the same time, the bank's board of directors, concluding that Ballard and Chittenden had acted in good faith in their dealings with Myers, voted to indemnify them in the action and to advance all litigation expenses.

Several months later, the bank, Chittenden and Ballard settled the action for $90,000 and the bank, apparently, paid Myers the agreed-upon amount. Sometime thereafter, the bank notified WMBIC of the settlement and requested reimbursement for the $90,000, plus an additional $43,608.21 in legal fees and expenses. As indicated, WMBIC's liquidator denied the claim and the circuit court confirmed the denial when the matter was

---

[3] The policy provided coverage for "all Loss which the Directors and Officers . . . shall become legally obligated to pay" as a result of claims made against them for their wrongful acts. Section 3(a)(5) of the policy specifically excludes from coverage, any claims based on allegations of "dishonesty," and section 3(b)(3) excludes any claim based on bodily injury, sickness, disease or death.

403

submitted on joint motions for summary judgment. The bank appeals.

██

We review summary judgments *de novo*, following the same methodology as the trial court. *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582 (Ct. App. 1983). Where, as here, the material facts are not in dispute, summary judgment is an appropriate procedure for resolving the legal issues.

WMBIC's policy is not a bank liability policy. It protects only the bank's directors and officers from personal liability for their "wrongful acts" in two situations. Subsection (A) of the policy's coverage clause insures the directors and officers directly when claims are made against them which are not indemnified by the bank, and subsection (B) provides for reimbursement to the bank for amounts paid to indemnify its officers and directors for covered losses.[4] In this case, as indicated, the bank indemnified Ballard and Chittenden. We thus need consider only subsection (B), which provides coverage if four factors coalesce: (1) a claim is made against the directors or officers, individually or collectively, (2) for a wrongful act,[5] (3) resulting in a loss, (4) for which the bank has indemnified the directors or officers as

---

[4] The policy provisions read as follows: "[T]he insurer agrees:

(A) With the Directors and Officers of the Bank that if . . . any claim or claims are made against the Directors and Officers . . . for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers . . . all Loss which the Directors and Officers . . . shall become legally obligated to pay.

(B) With the Bank that if . . . any claim or claims are made against the Directors and Officers . . . for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Bank, all Loss for which the Bank is required to indemnify or for which the Bank has . . . indemnified the Directors and Officers.

[5] The policy defines "wrongful act" as:

required or permitted by law. If any of these elements is absent, there is no coverage.

The bank's argument for coverage is straightforward. It contends that the D&O policy covers its claim because Ballard and Chittenden committed wrongful acts against Myers, a claim was made against them based on those acts, there was a loss, and the bank indemnified them for that loss. WMBIC's response is that, under the policy, an insurable loss is one the directors or officers are "legally obligated to pay," and because, as a matter of law, neither Ballard nor Chittenden had any personal liability with respect to Myers' claim, there was no loss within the meaning of the policy.

■

The question thus raised involves construction of an insurance policy. It is a question of law which we review *de novo. Kaun v. Indus. Fire & Casualty Ins. Co.,* 148 Wis. 2d 662, 667, 436 N.W.2d 321, 323 (1989). The test is not what the insurer intended the words to mean but what a reasonable person in the insured's position would have understood the words to mean. *Kaun* at 669, 436 N.W.2d at 324. And in applying this test we consider the policy in its entirety. *See Reznichek v. Grall,* 150 Wis. 2d 752, 757, 442 N.W.2d 545, 548 (Ct. App. 1989).

The WMBIC policy is a "directors and officers" liability policy. Like D&O policies generally, it was issued to protect the bank's directors and officers from third-party claims made against them in their capacity

---

[A]ny actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Bank individually or collectively, or any matter claimed against them solely by reason of their being Directors or Officers of the Bank.

as officers or directors. 2 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 12A.01[1] (1992).

The policy defines "loss" as:

*[A]ny amount which the Directors and Officers are legally obligated to pay* or for which the Bank is required to indemnify the Directors or Officers, or for which the Bank has, to the extent permitted by law, indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts . . .. (Emphasis added.)

The bank argues that under this definition, it plainly suffered a covered "loss" when it resolved to indemnify Ballard and Chittenden in the Myers action. But, as we have said, this is not a bank liability policy. It is a directors and officers policy in which WMBIC agreed "[w]ith the Directors and Officers" that it would pay, "on [their] behalf" and pursuant to the policy terms, any loss "which the Directors and Officers . . . shall become legally obligated to pay." The only policy provision relating to the bank is WMBIC's agreement to pay *not the bank's loss*, but only such loss "for which the Bank . . . has . . . indemnified the Directors and Officers." (Id.) In both clauses, the loss insured against is that of the directors and officers, and that is borne out by the definition of loss which we have quoted above.

The commentators agree that a "loss" under D&O policies, by definition, encompasses only those amounts that insureds are legally obligated to pay. *See* Kenneth F. Oettle and Davis J. Howard, *D & O Insurance: Judicially Transforming a "Duty to Pay" Policy into a "Duty to Defend" Policy*, 22 TORT & INSURANCE L. J. 337, 338 n.4 (1987); LONG, *supra*, § 12A.05[7][a][i]. Such a definition prevents insurers from being required to pay claims

for which the insured officers and directors are not personally liable. *See First Nat'l Bank of Memphis v. Aetna Casualty & Sur. Co.*, 309 F.2d 702 (6th Cir. 1962), *cert. denied*, 372 U.S. 953 (1963) (insurer liable only where payments are imposed by legal liability); *Ohio Casualty Ins. Co. v. Ross*, 222 F. Supp. 292 (D. Md. 1963) (no coverage for insured's gratuitous payments after voluntarily assuming liability). Thus, a prerequisite for coverage is the insured's—the director's or the officer's—legal obligation to pay for the claim made against him or her.

The language of the WMBIC policy is consistent with that requirement. While the definition of loss contains three separate clauses, separated by the disjunctive word "or", implicit in each clause is the requirement that the insureds are legally obligated to pay for the claim. Without such a requirement, insurers would be forced to pay for losses which their insureds had not incurred. Considering the policy as a whole, we conclude that a reasonable insured would not interpret its language as covering any claims for which the officers or directors were not personally liable.

Myers' complaint alleged that after having taken out a loan from Mutual Benefit at the bank's urging, the bank "*through its agents* . . . persuaded [him] to turn that money over to the bank," by telling him that "when the interest payment became due on the Mutual Benefit Life Insurance Company obligation, the bank would loan him the money for the same." (Emphasis added.) Myers further alleged that, "even though . . . Ballard, *as an agent and/or employee* of . . . Farmers Savings Bank . . . had represented to [him] that it would lend [him] the money necessary for the interest payment to [Mutual Benefit] it refused to do so when it came time for the payment." (Emphasis added.)

In his claim for breach of contract,[6] Myers alleged that he and "Farmers Savings *Bank*, entered into an oral agreement whereby in consideration [for his deposit] Farmers Savings *Bank*, was to lend [him] a sum of money sufficient to satisfy the interest obligation due and payable . . . to Mutual Benefit . . .." (Emphasis added.) After entering into this agreement, Myers claimed that the *bank* refused to lend him the money, thereby breaching the "oral agreement."

The complaint thus states a claim against the bank for breach of contract through the acts of its agents. Ballard and Chittenden are referred to in the complaint solely as agents of the bank.

■

Under Iowa law[7] an agent who enters into a contract for a disclosed principal, is not a party to that contract. *Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127, 132 (Iowa 1983); *Cryder Well Co. v. Stangl*, 136 N.W.2d 519, 521 (Iowa 1965). Thus, because they are not parties to their principals' contracts with third parties, agents can bear no personal liability for losses caused when the principal breaches those contracts. *Alsco Iowa, Inc. v. Jackson*, 118 N.W.2d 565, 567 (Iowa 1962). *See also Wilkins and Boussard Architects v. Carey*, 203

---

[6] In other portions of the complaint, as we have noted, Myers alleged intentional infliction of emotional distress, fraud and tortious conversion, respectively. However, the bank did not argue to the trial court—nor does it argue to this court that either Ballard or Chittenden acted intentionally or dishonestly. Indeed, it conceded in its brief to the trial court that the officers' actions were merely "negligent"; and, as we also have noted, its payment was based on a resolution passed by its board of directors that both men had acted in good faith in their dealings with Myers.

[7] We apply Iowa law because Myers complaint was filed in Iowa.

N.W.2d 202, 204 (Iowa 1972). Because Ballard and Chittenden bore no personal liability for the bank's breach, they were not legally obligated to pay Myers' damages, there was no loss, and thus no coverage under the WMBIC policy.

The position urged upon us by the bank would, by providing coverage where the insured officers and directors are not legally obligated to pay, transform a D&O policy into a corporate liability policy. Such an interpretation would be contrary to the purpose of D&O policies which, as we have said, exist to shield directors and officers—not their employer/principal—from personal liability. If Ballard and Chittenden had no personal liability, there was nothing to indemnify them for.[8]

Because we conclude that the claim filed by Farmers Savings is not covered by the WMBIC policy, we need not address the parties' remaining arguments.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). The majority concludes that the following issue is dispositive: did the MGIC Indemnity Corporation policy cover Richard and Kathryn Myers' claim against George Ballard, cashier of Farmers Savings Bank, and Robert Chittenden, presi-

---

[8] In its reply brief the bank argues for the first time that it was not bound by the contract with Myers because it had revoked Ballard's authority to enter into contracts on behalf of the bank and that "Mr. Myers was generally aware of this revocation of authority." Thus, the argument goes, Ballard was personally liable for Myers' claim because he was not acting as the bank's agent. The argument, however, is unsupported by any references or citations to the record and we need not consider it further. *Keplin v. Hardware Mut. Casualty Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964).

dent of Farmers Savings Bank? I conclude that the plain language of MGIC's policy provided coverage to the bank. I therefore dissent.[1]

MGIC's policy provides liability coverage to the bank's directors and officers and reimbursement coverage to the bank. Under its policy, MGIC agreed:

> (B) With the Bank that if, during the policy period, any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Bank, all Loss for which the Bank is required to indemnify *or for which the Bank has, to the extent permitted by law, indemnified the Directors and Officers.* [Emphasis added.]

The policy defines "Wrongful Act" as follows:

> The term "Wrongful Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Bank individually or collectively, or any matter claimed against them solely by reason of their being Directors or Officers of the Bank.

MGIC's policy defines "Loss" as follows:

---

[1] My tentative conclusion is that the dispositive issue may be whether the insurer has a policy defense because the bank and Ballard and Chittenden settled the Myers' claim without the agreement of the insurer. Despite the parties' agreement that there are no disputed issues of material fact, a trial may be necessary if we decide that the insurer must show prejudice to avoid coverage because of the insureds' failure to cooperate as required by the policy.

The term "Loss" shall mean any amount . . . for which the Bank has, to the extent permitted by law, indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to . . . settlements . . ..

It is undisputed that Ballard and Chittenden were officers and directors of the bank. It is also undisputed that the Myers allege that Ballard injured them by a misstatement or misleading statement that the bank would lend the Myers money to cover overdrafts as it had in the past.[2] The Myers alleged that in reliance on Ballard's representations, they turned over funds to the bank that were used to satisfy prior debt. When the bank failed to cover their overdrafts, the Myers suffered economic damage.

On November 14, 1984, the board of directors of the bank unanimously adopted the following resolution: "BE IT . . . RESOLVED, that the Bank shall and hereby does indemnify each of George Ballard and Robert Chittenden and agrees to hold them harmless from any judgments, . . . settlements and reasonable expenses actually incurred by them in connection with [the Myers' lawsuit]." Thus, all of the conditions for coverage under the policy are satisfied: claims were made against officers of the bank for "Wrongful Act[s]" and the bank suffered a "loss" by indemnifying the officers for such claims.

MGIC argues that "loss" means only an amount which a director or officer is "legally obligated to pay." However, as to the bank, the definition of "loss" is in the disjunctive. The "legally obligated to pay" language does not apply to the coverage which the policy provides the

---

[2] Apparently Chittenden was sued because he was president of the bank. The Myers do not allege that Chittenden made misrepresentations or misstatements to them.

411

bank. It is enough under the plain language of the policy that the bank has indemnified a director or officer for a claim made against the officer or director for a wrongful act. Undoubtedly the definition of "loss" was written so that the bank would have coverage for any settlement which it might make on behalf of a director or officer without having to establish through litigation the legal obligation of the officer or director to pay a claim.[3]

MGIC asks us to rewrite the policy to include a provision that it need not provide coverage for the bank unless the legal obligation of the officer or director who is indemnified has been established. It is not our function to rewrite the insurers' policy. If the policy is ambiguous, it is to be construed in favor of coverage. *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 652, 436 N.W.2d 594, 599 (1989).

The majority concludes that adopting the bank's position would transform a directors' and officers' policy into a corporate liability policy. The majority ignores the fact that MGIC's policy is titled "Directors' And Officers' Liability Insurance Policy *Including Bank Reimbursement.*" (Emphasis added.) MGIC's policy is not exclusively a directors' and officers' policy. It provides coverage not only to the directors and officers, but to the bank itself. In view of the plain language of the policy, it is pointless to argue principles of agency. MGIC agreed to provide coverage to the bank if the bank indemnified an officer or director for the settlement of a claim against the officer or director. I would hold MGIC

---

[3] I do not suggest that MGIC must reimburse the bank for bad faith, or even improvident, settlements. MGIC has the right to approve settlements. It may have a policy defense based on the bank's failure to obtain its approval of the settlement. It makes no sense, however, to require litigation to establish the director's or officer's "legal obligation to pay" before coverage is triggered.

to its agreement unless it can establish some other policy defense.