Michael GREEN, Max Rasansky, The Board of Trustees of Congregation Emanu-el B'ne Jeshurun, and Congregation Emanu-el B'ne Jeshurun,†
Plaintiffs-Appellants,

v.

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 01–2778. Submitted on briefs August 6, 2002.—Decided November 5, 2002.*

2002 WI App 297

(Also reported in 655 N.W.2d 147.)

† Petition to review denied 1-21-03.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert H. Friebert, S. Todd Farris,* and *Brian C. Randall* of *Friebert, Finerty & St. John, S.C.,* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arthur P. Simpson* of *Simpson & Deardorff, S.C.,* of Milwaukee.

Before Wedemeyer, P.J., Curley and Deininger, JJ.

¶ 1. CURLEY, J. Michael Green, Max Rasansky, the Congregation Emanu-El B'ne Jeshurun (Congregation), and the Board of Trustees of the Congregation Emanu-El B'ne Jeshurun (Board) appeal from the trial court's judgment dismissing their claims against Heritage Mutual Insurance Company (Heritage) seeking reimbursement from Heritage under a "directors and officers" (D & O) liability insurance policy for costs and attorneys' fees incurred in defense of claims against Green and Rasansky, as trustees of the Board, in an underlying lawsuit. The appellants contend that because the underlying complaint alleged claims against Green and Rasansky personally for money damages, Heritage had a duty to defend under the D & O policy.

¶ 2. Based on this court's prior ruling in *Liquidation of WMBIC Indem. Corp.,* 175 Wis. 2d 398, 499 N.W.2d 257 (Ct. App 1993), we must disagree and conclude: (1) the D & O liability policy covers only losses for which the trustees are personally liable; (2) the claims in question were not against the trustees personally; and, therefore, (3) because the trustees had

846

no personal liability, there was no coverage under the policy. Accordingly, we affirm.

## I. BACKGROUND.[1]

¶ 3. The Congregation oversees a Jewish synagogue, which was formerly located at 2419 East Kenwood Boulevard in the City of Milwaukee, from 1927 to 1998. The Congregation is an incorporated religious society existing under the laws of the State of Wisconsin, and consists of approximately 1,300 member families. The Congregation is governed by a twenty-one-person Board of elected volunteer members, including Green and Rasansky. Addressing a population shift of its Congregation members to the northern suburbs of Milwaukee, the Board decided to build a second facility for worship, teaching, and cultural enhancement in River Hills. The River Hills facility was dedicated on October 19, 1997.

¶ 4. In November 1997, Green, acting as the president of the Board, approached the University of Wisconsin-Milwaukee Fine Arts Department (UWMF) and asked if it had any interest in purchasing the Congregation's Kenwood facility. UWMF expressed interest, and the Board ultimately approved the sale of the Kenwood facility to UWMF for $4.5 million. The Board later learned, however, that the title insurance company would not ensure clear title if the sale was not approved by the Congregation. As a result, a special meeting of the Congregation was held on February 1, 1999, to vote on the sale. The sale was approved by a two-to-one majority vote with over 600 members voting.

---

[1] A number of the facts surrounding the underlying lawsuit are taken from *Friends of Kenwood v. Green*, 2000 WI App 217, ¶¶ 3–9, 239 Wis. 2d 78, 619 N.W.2d 271.

¶ 5. However, a number of disgruntled members complained that the vote was unreasonable because members' names appeared on the ballot and members had to travel to the River Hills facility to cast the vote. On July 29, 1999, these disgruntled members (Friends of Kenwood) filed a complaint against the Board, the Congregation, Green and Rasansky, in an attempt to block the sale. The complaint alleged that the defendants engaged in deceit, misrepresentation, a breach of fiduciary duty, and that the defendants violated the by-laws of the Congregation. Essentially, the complaint contended that the Friends of Kenwood were deceived into accepting the River Hills construction project because of assurances that the original facility would not be abandoned.

¶ 6. The defendants filed a motion to dismiss, alleging that the complaint failed to state a claim for relief. On November 8, 1999, the trial court granted the motion to dismiss for failure to state a claim and granted leave to amend the complaint. On November 29, 1999, the Friends of Kenwood filed an amended complaint. Again, the defendants moved to dismiss. The trial court granted their motion as to the Board and the Congregation on the basis that the allegations lacked particularity as to which Board members and Congregation members made the misrepresentations and to which Kenwood members such misrepresentations were made. However, the motion to dismiss was denied as to Green and Rasansky.

¶ 7. The Friends of Kenwood then appealed the trial court's dismissal of the Board and the Congregation from the lawsuit. This court affirmed. *See Friends of Kenwood v. Green*, 2000 WI App 217, 239 Wis. 2d 78, 619 N.W.2d 271. The Friends of Kenwood then moved to dismiss their claims against Green and Rasansky. On

March 1, 2001, the trial court dismissed the final claims from the underlying lawsuit.

¶ 8. Shortly after the initial complaint had been filed, the Congregation gave notice to Heritage on behalf of all of the defendants requesting that Heritage provide a defense. Throughout the course of the under-lying litigation, Heritage received numerous requests for defense coverage, but continually denied coverage. On March 29, 2001, the Congregation, the Board, Green and Rasansky filed a complaint against Heritage seeking recovery under the Congregation's D & O insurance policy for all costs and attorneys' fees ex-pended in defending the underlying lawsuit. Heritage moved to dismiss. The trial court granted this motion and entered final judgment dismissing all claims against Heritage.

## II. ANALYSIS.

¶ 9. The trial court resolved this case by granting Heritage's motion to dismiss, concluding: (1) Green and Rasansky had no personal liability for damages as required by *Liquidation of WMBIC Indem. Corp.*, 175 Wis. 2d 398, 499 N.W.2d 257 (Ct. App 1993); and, therefore, (2) they failed to satisfy a prerequisite for coverage under the Congregation's D & O liability policy. Thus, this appeal requires us to construe the amended complaint filed against Green and Rasansky in light of the D & O liability policy as interpreted in *WMBIC*.

¶ 10. A motion to dismiss for failure to state a claim tests whether the complaint is legally sufficient to state a claim for which relief may be granted. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 331, 565

N.W.2d 94 (1997). The legal sufficiency of the complaint is a question of law that this court reviews *de novo. Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). In examining the legal sufficiency of the complaint, we assume that the facts alleged in the complaint are true, *see id.*, and we are concerned only with the legal sufficiency of the complaint, *see Lane v. Sharp Packaging Sys., Inc.*, 2001 WI App 250, ¶ 15, 248 Wis. 2d 380, 635 N.W.2d 896. Thus, we will affirm an order dismissing a complaint for failure to state a claim if it appears to a certainty that no relief can be granted under any set of facts that the plaintiffs could prove in support of their allegations. *See Quesenberry v. Milwaukee County*, 106 Wis. 2d 685, 690, 317 N.W.2d 468 (1982).

¶ 11. "To determine whether a duty to defend exists, the complaint claiming damages must be compared to the insurance policy and a determination made as to whether, if the allegations are proved, the insurer would be required to pay the resulting judgment." *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364–65, 488 N.W.2d 82 (1992). Assuming the allegations are proved true, if the insurer would be obligated to pay the resulting judgment under the terms of the policy, then the insurer has a duty to defend the insured. *Atlantic Mut. Ins. Co. v. Badger Med. Supply Co.*, 191 Wis. 2d 229, 236, 528 N.W.2d 486 (Ct. App. 1995). The interpretation of an insurance policy is a question of law, and we determine an insurer's duty to defend solely from the allegations contained in the complaint without consideration of extrinsic facts. *Id.*

850

¶ 12. The amended complaint, filed on November 29, 1999 against the Board, the Congregation, and Green and Rasansky, as trustees of the Board, states, in relevant part:

## FIRST CAUSE OF ACTION

36. The actions of the defendants, Michael Green, Max Rasansky, and the Board of Trustees as set forth in ¶¶ 8 through 31 hereinabove violated the bylaws of the Congregation, specifically Article V - § 3, Article VII - § H, Article X - § 2, and Article XI - § 2.

## SECOND CAUSE OF ACTION

37. The actions of the defendants, Michael Green, Max Rasansky, and the Board of Trustees as set forth in ¶¶ 8 through 31 hereinabove constitute deceit and misrepresentation, and breach of their fiduciary duty to the plaintiffs.

## THIRD CAUSE OF ACTION

38. The misrepresentation of the defendants as set forth in ¶¶ 8 through 35 above create a promissory estoppel which unjustly enriched the defendant, Congregation Emanu-El B'ne Jeshurun.

WHEREFORE, the plaintiffs demand judgment against the defendants as follows:

(1) Injunctive and declaratory relief voiding the contract of sale of the Kenwood temple property, between Congregation Emanu-El B'ne Jeshurun and the UWM foundation.

(2) An order removing the Board of Trustees of Congregation Emanu-El B'ne Jeshurun, including the defendants, Michael Green and Max Rasansky.

(3) An order directing reimbursement of contributions and cancellation of pledges to the campaign to build the River Hills campus, to all members of Congregation Emanu-El B'ne Jeshurun who had made those contributions and pledges based upon assurances that the Congregation's principal house of worship would remain at the Kenwood temple and would not be replaced by the River Hills facility. And

(4) An order for the Plaintiffs' costs, disbursements, reasonable attorney's fees, and such other relief as may be appropriate.

¶ 13. In order to determine whether Heritage had a duty to defend Green and Rasansky in the underlying lawsuit, we must examine the Congregation's insurance policy. The policy provisions read as follows:

We agree to pay on behalf of the *named insured* [Congregation] or an *insured person* [trustee] all *loss* which they, individually or collectively, shall become legally obligated to pay. The claim for such a *loss* must:

**a.** First be made against them during the *policy period;* and

**b.** Arise by reason of a *wrongful act.*

(Emphasis in original.) The policy continues by defining "loss" and "wrongful acts" in the following manner:

*"Loss"* means any amount which an *insured person* [trustee] is legally obligated to pay or which the *named insured* [Congregation] may be required or permitted by law to pay as indemnity to an *insured person* [trustee] for a claim or claims made against an *insured person* [trustee] for *wrongful acts.*

. . . .

*"Wrongful act"* means any actual or alleged error or misstatement or misleading statement or act or omis-

852

sion or neglect or breach of duty by an *insured person* [trustee] in the discharge of their duties, individually or collectively. It also includes any matter claimed against them solely by their being *insured persons* [trustee].

(Emphasis in original.)

¶ 14. Like the insurance policy at issue in *WM-BIC*,[2] this is a D & O policy, which protects the individual trustees from personal liability for their

[2] The relevant policy provisions at issue in *Liquidation of WMBIC Indem. Corp.*, 175 Wis. 2d 398, 499 N.W.2d 257 (Ct. App 1993) are nearly identical to those at issue in the present case and read as follows:

> [T]he insurer agrees: (A) With the Directors and Officers of the Bank that if . . . any claim or claims are made against the Directors and Officers . . . for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers . . . all Loss which the Directors and Officers . . . shall become legally obligated to pay.

> (B) With the Bank that if . . . any claim or claims are made against the Directors and Officers . . . for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Bank, all Loss for which the Bank is required to indemnify or for which the Bank has . . . indemnified the Directors and Officers.

*Id.* at 404 n.4. The policy continued by defining "loss" as:

> [A]ny amount which the Directors and Officers are legally obligated to pay or for which the Bank is required to indemnify the Directors or Officers, or for which the Bank has, to the extent permitted by law, indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts . . . .

*Id.* at 406. Finally, the policy in *WMBIC* defined "wrongful act" as:

> [A]ny actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Bank individually or collectively, or any

"wrongful acts" in two situations: (1) the first clause of the definition of "loss" provides that the trustees are directly insured when claims are made against them which are not indemnified by the Congregation; and (2) the second clause of the definition of "loss" provides that the Congregation will be reimbursed for amounts paid to indemnify the trustees for any covered losses. *See also WMBIC*, 175 Wis. 2d at 404.

¶ 15. Because the Congregation is statutorily mandated to reimburse the trustees, *see* WIS. STAT. § 181.0872(1) (1999–2000), only the second situation is applicable.[3] Thus, under the D & O policy, coverage exists if four factors coalesce: "(1) a claim is made against the directors or officers, individually or collectively, (2) for a wrongful act, (3) resulting in a loss, (4) for which the [Congregation] has indemnified the directors or officers as required or permitted by law." *Id.* at 404–05 (footnote omitted). Therefore, because the fourth factor is satisfied by WIS. STAT. § 181.0872(1) (1999–2000), we must only determine whether the amended *Friends of Kenwood* complaint made a claim against the trustees, individually or collectively, for a

matter claimed against them solely by reason of their being Directors or Officers of the Bank.

*Id.* at 404–05 n.5.

[3] The Congregation was statutorily mandated to indemnify Green and Rasansky as trustees of an incorporated religious society. The mandatory indemnification provision provides:

A corporation shall indemnify a director or officer, to the extent that he or she has been successful on the merits or otherwise in the defense of a proceeding, for all reasonable expenses incurred in the proceeding if the director or officer was a party because he or she is a director or officer of the corporation.

WIS. STAT. § 181.0872(1) (1999–2000).

"wrongful act" resulting in a "loss." However, "[i]f any of these elements is absent, there is no coverage."[4] *WMBIC*, 175 Wis. 2d at 405.

¶ 16. Therefore, we must examine the amended *Friends of Kenwood* complaint to determine whether the trustees suffered a "loss," as that term is defined in the insurance policy and in light of the holding in *WMBIC*. The D & O policy in question was issued to protect the Board members, individually and collectively, from third-party claims made against them in their capacity as trustees. *See WMBIC*, 175 Wis. 2d at 405–06. As such, "a 'loss' under D & O policies, by definition, encompasses only those amounts that insureds [– trustees–] are legally obligated to pay." *Id.* at 406. "Such a definition prevents insurers from being required to pay claims for which the insured officers and directors are not personally liable." *Id.* at 406–07. "Thus, a prerequisite for coverage is the insured's—[the trustee's]—legal obligation to pay for the claim made against him or her." *Id.* at 407. In other words, despite the Congregation's belief that D & O insurance protects trustees in every situation in which they are sued in their capacity as trustees, not all claims made against a trustee fall within the policy definition of "loss." Only those claims which result in the trustees' personally being held liable are insured.

¶ 17. Consequently, based on the *WMBIC* court's analysis, we conclude that while the amended *Friends of Kenwood* complaint states a number of claims

---

[4] The four-part analysis makes it clear that the mere existence of the mandatory indemnification statute does not automatically create coverage.

against the Congregation through the acts of its agents, Green and Rasansky, the complaint fails to allege any claims for which Green and Rasansky could be held personally liable. First, the claims in question include only breach of contract, promissory estoppel, deceit, misrepresentation, and breach of fiduciary duty. "This court has long adhered to the general rule that, where an agent merely contracts on behalf of a disclosed principal, the agent does not become personally liable to ·the other contracting party." *See Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 848, 470 N.W.2d 888 (1991). Furthermore, if a party contracting with a business entity knows that the agent for that entity is contracting on behalf of a corporation, the agent would not be personally liable unless he or she expressly assumed such liability. *See id.* at 850. Thus, because (1) our review of the record indicates that Green and Rasansky operated solely on behalf of the Congregation, and·(2) the record is bereft of any evidence of an express assumption of liability on behalf of Green or Rasansky, we conclude that Green and Rasansky acted merely as agents on behalf of the Congregation.

¶ 18. Additionally, the only relief sought under the complaint was injunctive relief—the amended *Friends of Kenwood* complaint demanded: (1) injunctive and declaratory relief voiding the contract of sale of the Kenwood facility; (2) an order removing the Board; and (3) an order directing reimbursement of contributions and cancellation of pledges to build the River Hills facility.[5] None of these requests seek damages personally from Green, Rasansky or any other Board member.

---

[5] Although the prayer for relief is not a substantive part of a complaint, and therefore, not necessary to our analysis, *see Midway Motor Lodge v. Hartford Ins. Group*, 226 Wis. 2d 23, 35–36, 593 N.W.2d 852 (Ct. App. 1999), we find it persuasive

Thus, the amended *Friends of Kenwood* complaint failed to allege claims for which the trustees would have been "legally obligated to pay" as required for coverage under a D & O policy as interpreted in *WMBIC*. *See WMBIC*, 175 Wis. 2d at 406.

¶ 19. Although the complaint in question, on its face, fails to clear the *WMBIC* hurdle, the appellants contend that the trial court in the underlying action actually held that the amended *Friends of Kenwood* complaint "stated personal claims for money damages against Green and Rasansky."[6] In support of their conclusion, the appellants cite the trial court's following statement:

> [B]ased upon a reading of the plaintiff's first amended complaint, and applying the law that says that the plaintiffs, if he states or she states any cause of action at all for any form of relief, and that it be liberally construed, that the complaint stands, and that the remaining defendants in the plaintiff's complaint are Michael Green and Max Rasansky, all the other defendants are dismissed out . . . .

We do not interpret this or any other part of the court's decision, which dismissed the Board and the Congregation from the underlying lawsuit, as actually holding that personal claims for money damages were asserted against Green or Rasansky, nor could we. The trial court's release of the Congregation and Board, but not the two individually-named trustees, from the underlying lawsuit, is inexplicable. In effect, the trial court left

that even the *ad damnum* clause failed to request any damages personally from either Green or Rasansky.

[6] Judge Dominic Amato presided over the initial action brought by the Friends of Kenwood.

in the suit the Congregation's agents, from whom the plaintiffs could not obtain the relief they sought, but dismissed the Congregation and the Board of trustees, the two entities that could have given the plaintiffs the relief they requested. The trial court appeared to recognize this anomaly when it stated:

> [B]ased upon what I have before me at this point in time, and with the Board of Trustees [and the Congregation] being out, there is no way that I've been able to reach the conclusion yet that Mr. Sutton's clients would be entitled to the relief they're asking for as set forth in paragraphs 1 and 2 of the prayer for relief.

In any event, nothing in the pleadings states or infers that money damages were being sought from Green or Rasansky. Moreover, "Wisconsin adheres to a 'notice-pleading' philosophy." *Midway Motor Lodge v. Hartford Ins. Group*, 226 Wis. 2d 23, 34, 593 N.W.2d 852 (Ct. App. 1999). "[I]f 'notice pleading' is to have any efficacy at all, the complaint must give the defendant fair notice of not only the plaintiff's claim but [also] 'the grounds upon which it rests' as well." *Id.* at 35. "[I]t is not enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining about, and can see that there is some basis for recovery." *Id.* (citations omitted). Thus, because courts are to make conclusions on coverage issues based solely on the allegations within the four corners of the complaint, *see Doyle v. Engelke*, 219 Wis. 2d 277, 284, 580 N.W.2d 245 (1998), the fact that two of the initial defendants were dismissed from the underlying lawsuit does not alter the effect of the amended complaint.

¶ 20. Accordingly, we conclude that the Congregation has failed to establish a prerequisite for coverage under the D & O policy—that is, that the trustees were legally obligated to pay for the claims made against them. Therefore, because Green and Rasansky, as agents of the Congregation, were not personally liable, Heritage was not obligated to pay the resulting judgment under the terms of the policy, and thus, had no duty to defend Green or Rasansky in the underlying lawsuit.[7] Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

¶ 21. WEDEMEYER, P.J. (*dissenting*). I disagree with the majority's decision in this case and therefore respectfully dissent for the reasons that follow.

¶ 22. This was an unusual case in that the insurer did not proceed with the ordinary and common practice procedures utilized in insurance dispute cases. Moreover, the case was complicated by the early dismissal of the Congregation, but not individually named Board members, Green and Rasansky. As a result, this case became one viewed with hindsight, rather than focusing solely on the allegations in the complaint.

---

[7] We find troubling the absence of coverage for the Congregation's indemnification of its trustees' defense costs in the underlying lawsuit simply because the trustees were sued for acts taken in performance of their duties as officers of the Congregation for which they were not alleged to be personally liable. We observe that the policy, as written and interpreted under *WMBIC*, provides only limited coverage. However, the law set forth in *WMBIC* is clear and we are obligated to follow it. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (stating that "we may not overrule, modify, or withdraw language from a previously published decision of the court of appeals").

¶ 23. In order to determine whether or not Green and Rasansky were entitled to insurance coverage, we must limit our initial review to the allegations set forth in the complaint. The duty to defend is "predicated on allegations in a complaint which, if proved, would give rise to recovery under the terms and conditions of the insurance policy." *Elliott v. Donahue*, 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992). The nature, and not the merit, of the claims in the complaint determines the duty to defend. *Id.* at 321. Where the issue of coverage is "fairly debatable," the insurer must provide a defense until coverage is conclusively determined. *Id.* at 317.

¶ 24. The complaint here, in my opinion, clearly alleged covered causes of action—misrepresentation and breach of fiduciary duty. The claims against Green and Rasansky alleged misrepresentations and breaches, which caused some of the "Friends of Kenwood" to make contributions in reliance on the alleged misrepresentations.

¶ 25. The fact that, ultimately, the allegations were dismissed is not pertinent to our analysis. Looking solely at the allegations in the complaint, I conclude that Heritage had a duty to defend the action, even though, in the end, it turned out that no liability was incurred. The duty to defend is broader than the duty to indemnify. *General Cas. Co. v. Hills*, 209 Wis. 2d 167, 176 n.11, 561 N.W.2d 718 (1997). If the complaint alleges a claim that is potentially covered—"no matter how attenuated, frivolous, or illogical [the] allegations may be," *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 544 (Md. 1996), the insurance company has a duty to defend. Heritage failed to do that here. If Heritage had accepted its duty to defend, based on the allegations in

the complaint, Green and Rasansky would not have incurred costs associated with retention of separate counsel.

¶ 26. The majority dismisses Green's and Rasansky's contentions under an agency theory—i.e., Green and Rasansky are agents of the principal and, therefore, could not incur any personal liability. Although I don't disagree with that general statement, I conclude that that determination was premature. We do not know whether Green's and Rasansky's conduct brought them outside the protection of the agent-principal relationship. Moreover, in this case, the trial court dismissed the Congregation and the Board, and left Green and Rasansky as individual defendants, who had the potential of being personally liable if the "Friends" had been able to prove the misrepresentation allegations set forth in the complaint, and if it was determined that Green and Rasansky were not protected by the agency-principal indemnification arrangement.

¶ 27. Although it is true that the general rule of agency law is that an agent will not incur personal liability for conduct on behalf of the principal, the protection is not absolute. When the agency relationship is disclosed, a plaintiff is entitled to recover from the principal, but not the agent. *Hooper v. O.M. Corwin Co.*, 199 Wis. 139, 146, 225 N.W. 822 (1929) (citation omitted). Agency law, however, does not insulate an agent from liability for its torts. *Ford v. Wisconsin Real Estate Exam. Bd.*, 48 Wis. 2d 91, 102, 179 N.W.2d 786, 792 (1970) (*citing* RESTATEMENT (SECOND) OF AGENCY § 343), which states:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the

command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

¶ 28. Comment d states in part that "[a]n agent who assists another agent or the principal to commit a tort is normally himself liable as a joint tortfeasor for the entire damage." Thus, under some circumstances, the agent may become personally liable. Here, it was too early to answer that question. The case did not proceed to discovery stages where those issues would have been explored. Thus, I cannot agree with the majority's conclusion that the principal-agency relationship insulates Green and Rasansky from any personal liability.

¶ 29. Finally, after reviewing *WMBIC*, I agree with Green and Rasansky that this case is distinguishable. Unlike *WMBIC*, the underlying complaint here did allege personal claims against Green and Rasansky. The trial court acknowledged this fact on the record when it dismissed the Congregation but, at the same time, allowed the case to continue against Green and Rasansky. Moreover, the record reflects that subsequent to the proceedings generated following the unsuccessful appeal of the dismissal of the Congregation, the "Friends" made a monetary demand on Green and Rasansky.

¶ 30. Finally, the insurance principle stating that if there is any doubt about the duty to defend, it must be resolved in favor of the insured provides additional support for my conclusion. *Elliott*, 169 Wis. 2d at 321. Any doubt about the duty to defend should have been resolved in favor of Green and Rasansky. Board mem-

bers, in general, are charged with certain decision-making authority for the organizations they represent. As was the case here, the Board found it had made a controversial decision that angered some of its members. The members filed a lawsuit because they disagreed with the Board's decision. In that lawsuit, the "Friends" named two members of the Board, individually—Green and Rasansky. The lawsuit alleged that Green and Rasansky breached their fiduciary duty, and misrepresented facts to members to secure donations. The lawsuit sought return of those donations. When the defendants notified Heritage of the lawsuit, Heritage refused to provide a defense. Heritage also failed to intervene in the action to seek a determination on coverage.

¶ 31. As a result of Heritage's actions, Green and Rasansky had to retain counsel to defend against the misrepresentation and breach of fiduciary duty claims. They remained in the action following an initial motion to dismiss, which dismissed the Congregation and the Board. Individuals who volunteer to serve as members of a Board, such as the one involved here, should not have to expend personal finances for conduct taken on behalf of the organization. The risk of this exposure, including associated defense costs, is why a board obtains D & O coverage. *See* 2 ROWLAND H. LONG, *The Law of Liability Insurance* § 12A.01[1] (1992) (D & O policies generally are issued to protect directors and officers from claims made against them in their official capacities.) In my opinion, the Board members here, like many religious organizations, purchased the D & O policy to provide protection—including a defense, for when they are sued as a result of a board decision. The Board members should not have to reach into their own pockets when a disgruntled member files a lawsuit,

whether the suit has merit or not, if the complaint alleges a potentially covered claim. The insurer must also defend the entire action even if some of the allegations in the underlying complaint fall outside of the policy. *Grube v. Daun*, 173 Wis. 2d 30, 73, 496 N.W.2d 106 (Ct. App. 1992). The defense must be provided until coverage is conclusively determined. *Elliott*, 169 Wis. 2d at 321.

¶ 32. That did not happen here. As a result, Green and Rasansky incurred legal fees that should have been paid by Heritage. In my opinion, Heritage breached its duty to defend and should be responsible for reimbursing Green and Rasansky directly for the defense costs associated with the underlying "Friends" action and the instant matter.