Harold C. Lane, Jr., Plaintiff-Appellant,

v.

Sharp Packaging Systems, Inc., Paul W. Scarberry and Virginia Scarberry, Defendants,

John H. Niebler, Esq. and Niebler, Pyzyk, Klaver & Wagner, LLP, Defendant-Respondent.†

Court of Appeals

*No. 01–0708. Submitted on briefs August 24, 2001.—Decided September 26, 2001.*

2001 WI App 250

(Also reported in 635 N.W.2d 896.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James O. Huber, Maureen A. McGinnity,* and *David W. Simon* of *Foley & Lardner* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terry E. Johnson* and *Maria DelPizzo Sanders* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. Harold C. Lane, Jr., brought an action alleging fraud and conspiracy claims

against his former employer, Sharp Packaging Systems, Inc., its owners, Paul W. and Virginia Scarberry (the Sharp defendants) and the Scarberrys' personal attorney, John H. Niebler and his firm, Niebler, Pyzyk, Klaver & Wagner, LLP (Niebler).[1] Lane appeals from a trial court order granting Niebler's pretrial motion to dismiss Lane's amended complaint. The court dismissed the complaint without prejudice, ruling that Lane's action was presently precluded by the court of appeals' holding in *Badger Cab Co. v. Soule*, 171 Wis. 2d 754, 492 N.W.2d 375 (Ct. App. 1992).

¶ 2. The first issue is whether a lawyer can be liable to a third party, nonclient for acts committed within the attorney-client relationship where the attorney does not have direct contact with the third party. We conclude that an attorney can be held liable for actions rendered in the course of representation if those actions are fraudulent. *Goerke v. Vojvodich*, 67 Wis. 2d 102, 226 N.W.2d 211 (1975); *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 401 N.W.2d 816 (1987).

¶ 3. The second issue is whether a lawyer and a client are incapable, as a matter of law, of engaging in a conspiracy pursuant to *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 405 N.W.2d 354 (Ct. App. 1987). We conclude that they are not.

¶ 4. The third issue is whether *Badger Cab* permits a plaintiff to pursue an action against the defendant and the defendant's attorney where the plaintiff

[1] This is the second appeal arising out of this litigation. The defendants, Niebler and Sharp Packaging, Inc., filed the first appeal, No. 00–1797, which stemmed from a nonfinal order pertaining to discovery. On January 10, 2001, we certified the issues in that appeal to the Wisconsin Supreme Court. Our certification was accepted by the supreme court on March 6, 2001, and the parties await a decision.

alleges that the defendant engaged in fraud and a conspiracy giving rise to the litigation. We hold that *Badger Cab* does not bar an action against the defendant's attorney under such circumstances.

¶ 5. We reverse the trial court's order dismissing Lane's complaint against Niebler. We remand for further proceedings.

## FACTS AND TRIAL COURT PROCEEDINGS

¶ 6. Since the issue on appeal is whether the trial court properly granted Niebler's motion to dismiss Lane's amended complaint, we are required to limit our review to the facts alleged in the complaint and we must assume those facts to be true. *See Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12, 529 N.W.2d 245 (Ct. App. 1995). Whether those alleged facts can withstand the rigors of a trial has yet to be determined.

¶ 7. Lane's alleged facts are as follows.[2] Sharp is a Subchapter S corporation engaged in the business of manufacturing and distributing preopened bags. The Scarberrys are the sole shareholders of Sharp and both are members of Sharp's board of directors.

¶ 8. Lane entered into an employment agreement with Sharp in December 1992. The agreement designated Lane as president and chief operating officer reporting to Paul Scarberry, who was chairman and chief executive officer. Subsequently, in 1995, Lane entered into an Employment Agreement and Stock Option Agreement with Sharp and the Scarberrys. The agreements provided Lane with a 25% interest in the

---

[2] Lane's amended complaint is much more detailed than our recital of the facts. We set forth only those facts we deem necessary for our discussion of the appellate issues.

value of the company. Lane's interest was structured as a stock option with "stock appreciation rights." The Stock Option Agreement provided that if Lane were terminated prior to the exercise of his option, he would have the choice of exercising his option or receiving his 25% share of the company as stock appreciation rights. More specifically, the agreement provided that if Lane's employment were terminated, Sharp would be required to redeem his unexercised stock option, paying him the fair market value of his 25% interest in the company as determined by an appraisal. The agreement also included antidilution adjustments as well as a "make up" provision to assure Lane would receive his 25% share in the event of the sale or other disposition of substantially all of the company's assets following his termination. Lane was entitled to at least a forty-eight-hour notice of any shareholder meetings and he was to be consulted regarding any action to be taken by the shareholders.

¶ 9. Pursuant to the Employment Agreement, Lane was elected to and remained a member of Sharp's board of directors. He also held the right to veto or discharge any professional providing services to Sharp if that professional was not performing to Lane's satisfaction. In 1995, Lane caused Sharp to replace Niebler as Sharp's corporate counsel and to remove Niebler from Sharp's board of directors. Niebler had represented Sharp at times since 1985 and the Niebler firm acted as Sharp's general counsel. Sharp replaced Niebler's services as corporate counsel with those of Meissner & Tierney.

¶ 10. Lane alleges in his complaint that as a result of the exercise of his contractual right to cause Niebler to be discharged as Sharp's counsel and to have him removed from Sharp's board of directors, Niebler har-

bored personal resentment, animosity and malice toward him. Lane contends that despite the termination of Niebler's services, Niebler secretly continued to provide services to Sharp without Lane's knowledge, consent or authority from 1995 through 1999.

¶ 11. Lane also alleges that from the outset of his employment with Sharp, Niebler tried to persuade the Scarberrys that there was no enforceable agreement with Lane and that Lane was trying to "steal Sharp from the Scarberrys." Lane contends that commencing in mid-1998, the Scarberrys and Niebler conspired and agreed to have the Scarberrys secretly withdraw funds from Sharp without paying Lane his 25% share. Lane further contends that in July 1998, without advising Lane, Niebler devised and proposed to the Scarberrys a plan for the withdrawal of a substantial portion of Sharp's retained earnings as a shareholder distribution. It is Lane's position that Niebler himself proposed the plan and the Scarberrys accepted and acted upon the plan, with full knowledge that such distribution would violate and impair Lane's rights to his 25% vested interest in Sharp. On February 23, 1999, Sharp paid the Scarberrys an approximately $3.8 million shareholder distribution without the unanimous consent of Sharp's board of directors and without notifying Lane or obtaining his consent. The transfer of assets out of the company significantly diminished the value of Lane's 25% interest in Sharp. On March 2, 1999, the Scarberrys informed Lane that he had been removed from the board of directors effective immediately and that he had been terminated effective May 31, 1999.

¶ 12. Lane filed his original complaint on December 14, 1999, raising the following allegations against Sharp and the Scarberrys: (1) fraudulent transfer, (2) breach of the Employment Agreement, (3) breach of the

Stock Option Agreement, (4) civil conspiracy to deprive him of his 25% interest in Sharp, (5) request for an accounting, and (6) request for declaratory and injunctive relief. Sharp and the Scarberrys appeared in the action represented by Stafford & Rosenbaum with Niebler listed as co-counsel.

¶ 13. Following discovery, Lane filed an amended complaint impleading Niebler and the Niebler law firm as additional defendants to the allegations of fraudulent transfer and conspiracy and adding a claim of tortious interference of contract.

¶ 14. Niebler filed a motion to dismiss Lane's claims pursuant to WIS. STAT. § 802.06(2)(a)6 (1999–2000),[3] arguing that as a matter of law, a party may not state a claim against another party's attorney and that Lane's claim was barred by our holding in *Badger Cab*. Following a hearing on February 16, 2001, the trial court granted Niebler's motion to dismiss, but ordered that the dismissal be without prejudice. Lane appeals.

### DISCUSSION

█

¶ 15. We review a trial court's decision to grant or deny a motion to dismiss for failure to state a claim de novo. *Town of Eagle*, 191 Wis. 2d at 311–12. The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. *Id.* at 311. As we have noted, we assume that the facts alleged in the complaint are true and liberally construe the pleadings, dismissing only if it is quite clear that under no conditions can the plaintiff recover. *Id.*

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version.

## 1. Attorney Liability

■

¶ 16. The first issue is whether an attorney may be liable to a third party, nonclient for fraudulent acts committed within the attorney-client relationship.[4] While we conclude, and the parties agree, that the answer is "yes," Niebler argues that he cannot be held liable under the circumstances presented in this case. We disagree.

¶ 17. In *Goerke*, 67 Wis. 2d at 105, the supreme court set forth the general statement adhered to in Wisconsin regarding the liability of attorneys to third parties:

> While an attorney is not liable to a third person for acts performed in good faith, and mere negligence on the part of an attorney is insufficient to give a right of action to a third party injured thereby, *an attorney is personally liable to a third party who sustains injury in consequence of his wrongful act or improper exercise of authority where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act.* (Emphasis added; citation omitted.)

¶ 18. This standard was subsequently confirmed in *Green Spring Farms*, 136 Wis. 2d at 321–24. There the court observed, " *Goerke* explicitly stated that an exception to the general rule of attorney immunity from liability to nonclients exists when an attorney's conduct is fraudulent with respect to nonclients." *Green Spring Farms*, 136 Wis. 2d at 321–22 (footnote omitted).

---

[4] Although Niebler raised this threshold issue in his motion to dismiss, the trial court did not address this question. Instead, the trial court limited its ruling to the *Badger Cab Co. v. Soule*, 171 Wis. 2d 754, 492 N.W.2d 375 (Ct. App. 1992), issue, a matter we will discuss later.

¶ 19. Niebler argues that the rule set forth in *Goerke* does not apply in this case because, unlike the attorneys in *Goerke* and *Green Spring Farms*, he did not have any direct contact with Lane during the transactions constituting the alleged fraud or conspiracy. Niebler cites to no authority, nor are we aware of any, that requires direct contact between the third party and the attorney accused of fraud or collusion. Although the facts of *Goerke* and *Green Spring Farms* differ from the facts of this case, the general statement as to the liability of attorneys to third parties remains constant. Here, Lane alleges that Niebler acted "maliciously" and "[w]ith actual intent to . . . defraud Lane" and that Niebler "exceeded the bounds of his professional obligation to Sharp and the Scarberrys and became an active participant in . . . fraudulent activities, acting in bad faith out of self-interest and/or malice toward Lane." Under this standard, Lane's complaint sets forth facts sufficient to maintain an action as a third party, nonclient against Niebler.

### 2. Attorney Ability to Conspire With a Client

¶ 20. Next, Niebler argues that the trial court properly dismissed Lane's civil conspiracy claim because it legally was impossible for Niebler and the Scarberrys, as attorney and client, to conspire together. We disagree.[5]

---

[5] Niebler also raised this issue in his motion to dismiss. As with the first issue, the trial court did not address this question, limiting its holding to the *Badger Cab* issue.

¶ 21. Civil conspiracy requires: "(1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Bruner v. Heritage Cos.*, 225 Wis. 2d 728, 736, 593 N.W.2d 814 (Ct. App. 1999) (citation omitted). To form a conspiracy there must be an agreement to violate or disregard the law, and the persons involved must knowingly be members of the conspiracy. *Id.* (citing Wis JI—Civil 2800).

¶ 22. Niebler relies on our holding in *Ford Motor* to support his argument that it was impossible for him to conspire with the Scarberrys. In *Ford Motor*, we considered whether a corporation and its subsidiary are capable of conspiring. *Ford Motor*, 137 Wis. 2d at 426. We held that, as a matter of law, a corporation and its wholly owned subsidiary are incapable of engaging in a conspiracy. *Id.* at 430.

¶ 23. Niebler contends that, like Ford Motor and its subsidiary, he and the Scarberrys are a single unit, with a "complete unity of interests and purpose." We disagree. Unlike Ford Motor and its subsidiary, Niebler is a legal entity distinct and separate from Sharp and the Scarberrys. And that status is not altered by the fact that Niebler was the attorney for the Sharp defendants. As such, Niebler and the Scarberrys were capable of engaging in a conspiracy.

¶ 24. On a related matter, Niebler contends that although Lane alleges a conspiracy between Niebler and the Scarberrys, Lane "cannot specifically point to any wrongful acts performed by [Niebler and his law firm] which would have injured him." In essence, Niebler contends that because it was the Scarberrys, not him, who actually took the allegedly unauthorized

distribution, he could not be held liable for simply providing them with legal counsel. Niebler is wrong. A conspiracy is a combination of two or more persons acting together to accomplish an unlawful purpose or a lawful purpose by an unlawful means. *Edwardson v. Am. Family Mut. Ins. Co.*, 223 Wis. 2d 754, 760, 589 N.W.2d 436 (Ct. App. 1998), *review denied,* 2001 WI 43, 242 Wis. 2d 544, 629 N.W.2d 784 (Wis. Mar. 6, 2000) (No. 99–2637). This law does not confer immunity to a conspirator because the conspirator did not receive a benefit from the wrongful act or because another conspirator may have played a more dominant or active role in the conspiracy. Here, Lane alleges that although the Scarberrys took steps to obtain the distribution, Niebler did much of the groundwork. Those allegations are sufficient to withstand Niebler's motion to dismiss.

### 3. *Badger Cab v. Soule*

¶ 25. We now move to the issue on which the trial court decided this case. The court dismissed Lane's action against Niebler and his law firm based on the policy considerations in *Badger Cab*. Relying on *Badger Cab*, the court found that the current litigation, which included Niebler as a defendant, would be delayed by the "problems that exist inherently in the involvement of the attorney and the client and their conduct and protections that need to be afforded under the law versus the necessity to protect Mr. Lane's interests." The court also questioned the urgency in resolving Niebler's role in the litigation noting that Niebler and his firm could be made accountable in subsequent litigation if necessary based on the outcome of Lane's case against the Sharp defendants.

¶ 26. Lane contends that *Badger Cab* does not apply to the facts of this case and that the trial court erroneously exercised its discretion in granting Niebler's motion to dismiss. Lane argues that *"Badger Cab* is limited to claims for malicious prosecution and does not apply where, as here, counsel is alleged to have participated in conduct giving rise to the underlying claims." We agree and conclude that the holding in *Badger Cab* does not preclude Lane's claim against Niebler.

¶ 27. In *Badger Cab*, the plaintiff taxi drivers brought an action against Badger Cab alleging various statutory violations. *Badger Cab*, 171 Wis. 2d at 757–58. Badger Cab then brought a counterclaim joining opposing counsel and alleging that counsel's prosecution of the action constituted an abuse of legal process and a civil conspiracy to abuse that process. *Id.* at 758. Under those circumstances, the court of appeals concluded that the defendants were "precluded from counterclaiming against plaintiffs' counsel for the prosecution of a lawsuit in the underlying lawsuit." *Id.* at 760.

¶ 28. In so deciding, the court noted that allowing counterclaims against opposing counsel would create a conflict of interest which would require substitution of counsel and would likely have a negative effect on the attorney-client privilege and work product immunity. *Id.* The court concluded that these difficulties could be avoided by simply requiring the claims against opposing counsel to be brought after termination of the principal lawsuit. *Id.* at 761.

¶ 29. This case is factually distinct from *Badger Cab*, and we think these distinctions are important. First, Niebler has not prosecuted any action against Lane on behalf of the Scarberrys or Sharp. Second, and far more important, Lane's claims against Niebler stem

from Niebler's alleged fraudulent or conspiratorial con-
duct *prior to this litigation—not from his conduct
relating to the litigation itself or his representation of
the Sharp defendants during that process.*

¶ 30. The *Badger Cab* court was concerned about
the potential for jury confusion if the underlying claims
were tried in conjunction with the counterclaims for
abuse of process. *Id.* We agree. A jury might well have
difficulty discriminating between the merits of the
underlying claim and the merit, or lack of it, in bringing
the action. But that potential for confusion is not
present in this case. As we have noted, the claim against
Niebler does not stem from any action he undertook
during the time he represented the Sharp defendants in
this litigation. Rather, the allegations against Niebler
and the Sharp defendants all stem from their alleged
collective conduct seeking to defraud Lane of his
claimed contractual rights. Juries routinely hear such
claims involving multiple defendants in a single action.

¶ 31. We acknowledge that *Badger Cab* expressed
concern about: (1) disqualification of the lawyer from
representing the client, and (2) the attorney-client
privilege and work product immunity. *Id.* at 760. And
we further acknowledge that by limiting *Badger Cab* as
we have, the lawyer is necessarily barred from repre-
senting the client in the kind of situation in the case at
bar. But that is a price that must be paid where the
lawyer is alleged to have engaged in actionable con-
duct.[6] Our holding, however, does not jeopardize the

---

[6] This consequence is less onerous to the Sharp defendants
in this case since Niebler served as co-counsel with Stafford &
Rosenbaum. After Lane filed his amended complaint naming
Niebler as an additional defendant, the Stafford firm continued
its representation of the Sharp defendants.

attorney-client privilege or the work product immunity governing Niebler's attorney-client relationship with the Sharp defendants.

¶ 32. We conclude that where, as here, the attorney's alleged actionable conduct predates the litigation and is unrelated to the prosecution of the claim or the attorney's conduct during the litigation, *Badger Cab* does not bar a simultaneous prosecution of the claim against the client and the attorney in the same action. We therefore conclude that the trial court erroneously exercised its discretion in dismissing Lane's claims against Niebler.

## Conclusion

¶ 33. We conclude that Niebler may be held liable to Lane, a third party, nonclient, for fraudulent acts committed within an attorney-client relationship. We also conclude that an attorney and the client are capable of engaging in a conspiracy. Finally, we conclude that *Badger Cab* does not preclude Lane from pursuing his claims against Sharp, the Scarberrys and Niebler in this single action. We therefore reverse the trial court's order dismissing without prejudice Lane's claims against Niebler. We remand to the trial court for further proceedings.

*By the Court.*—Order reversed and cause remanded.