ST. PAUL FIRE & MARINE INSURANCE COMPANY,
Plaintiff-Third-Party Defendant-Respondent-
Petitioner,

v.

Curtis J. KELTGEN, Defendant-Third-Party
Plaintiff-Appellant-Cross-Respondent,†

Paulet KELTGEN, Intervenor-Third-Party Plaintiff,

v.

Giles SMITH, Third-Party Defendant,

L.E. PHILLIPS CAREER DEVELOPMENT CENTER, INC.,
Third-Party Defendant-Respondent-Petitioner-
Cross-Respondent,

VENTURE INSURANCE COMPANY and Wausau Insur-
ance Company, Third-Party Defendants-
Respondents-Cross-Appellants.

Court of Appeals

*No. 02–1249. Submitted on briefs January 7, 2003.—Decided
February 4, 2003.*

2003 WI App 53

(Also reported in 659 N.W.2d 906.)

527

On behalf of Curtis J. Keltgen, the cause was submitted on the briefs of *Phillip Todryk* of *Todryk Law Office, S.C.* of Hudson.

On behalf of St. Paul Fire & Marine Insurance Company and L.E. Phillips Career Development Center,

Inc., the cause was submitted on the joint brief of *John P. Richie* of *Richie, Wickstrom & Wachs, LLP* of Eau Claire, and *Gregory Deckert* of *Vest & Deckert, P.A.* of Brooklyn Center, Minnesota.

On behalf of Venture Insurance Company and Wausau Insurance Company, the cause was submitted on the joint briefs of *James A. Pelish* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake, and *Robert J. Dreps* and *James D. Peterson* of *La Follette, Godfrey & Kahn* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Curtis Keltgen appeals a summary judgment in favor of L.E. Phillips Career Development Center (CDC), and its insurers, St. Paul Fire & Marine Insurance Company, Venture Insurance Company and Wausau Insurance Company. Keltgen's action originated as a counterclaim against CDC and its insurers for negligence and various claims under the patient's rights section of Wis. Stat. ch. 51.[1] Keltgen was a sheltered employee at CDC and was sexually assaulted by a fellow sheltered employee. St. Paul initi-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

ated this action, seeking a judgment declaring that CDC's liability for the assaults was limited to worker's compensation.

¶ 2. The trial court dismissed all but one of Keltgen's Wis. Stat. ch. 51 claims and later granted summary judgment, determining any recovery for that claim would duplicate the worker's compensation benefits Keltgen had already received. The court also granted CDC summary judgment on Keltgen's negligence claim, concluding CDC did not have a dual persona in its relationship with Keltgen and his recovery was limited by the exclusive remedy provision of the Worker's Compensation Act (WCA).

¶ 3. On appeal, Keltgen argues the court erred when it dismissed the majority of his Wis. Stat. ch. 51 claims and when it concluded the recovery under his remaining claim would duplicate his worker's compensation recovery. Keltgen also claims CDC had a dual persona in its relationship with him and the court should have allowed his negligence claim. We conclude the trial court properly dismissed the majority of the ch. 51 claims and correctly concluded any recovery under the remaining claim would duplicate Keltgen's worker's compensation settlement. In addition, we determine CDC did not have a dual persona in its relationship with Keltgen and the court properly dismissed his negligence claim. Therefore, we affirm the trial court's judgment.[2]

---

[2] Venture and Wausau Insurance also sought judgment declaring their policies did not cover Curtis's Wis. Stat. § 51.61 claims. The court denied this motion, and Venture and Wausau Insurance cross-appeal. Because we affirm the trial court's judgment, however, we need not address the cross-appeal. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

## BACKGROUND

¶ 4. Keltgen is a developmentally disabled adult with autism and mild mental retardation. In August 1994, he began working at CDC, a non-profit corporation that operates a sheltered workshop pursuant to a contract with Eau Claire County under WIS. STAT. § 51.437. During his employment at CDC, Giles Smith, another sheltered employee, repeatedly sexually assaulted Keltgen in a work restroom. Smith had a history of sexually assaultive behavior of which CDC was aware.

¶ 5. Due to his disabilities, Keltgen has a limited ability to communicate and was not able to effectively inform others about the assaults. He repeatedly told his case manager he was being bothered in the bathroom and informed his mother, Paulet, he was being touched by others at work, but little more. During this time, Keltgen became withdrawn from daily life and physically aggressive toward Paulet. In addition, his weight dropped from 153 to 120 pounds. When Paulet reported these changes to Keltgen's caseworker and asked if anything could be happening to him at work, the caseworker told her no. The caseworker was unaware of Smith's history.

¶ 6. In August 1995, Paulet found a pair of Keltgen's underwear that had been torn. She asked Keltgen about them and he gave her a more detailed account of the assaults. Paulet contacted CDC, which informed the police of Keltgen's complaints. The police eventually identified Smith as the assaulter and arrested him.

¶ 7. In August 1997, St. Paul, CDC's liability carrier, sought a judgment declaring worker's compensation to be Keltgen's only remedy against CDC for the

assaults. Keltgen counterclaimed against St. Paul and brought a third-party complaint alleging negligence against CDC and intentional assault against Smith. Keltgen also joined Venture and Wausau Insurance, CDC's worker's compensation carriers. He then brought an additional claim under WIS. STAT. § 51.61. The court allowed Paulet to intervene and she brought a negligence claim against CDC and its insurers.[3]

¶ 8. The court stayed proceedings in August 1998, pending a determination by the Department of Workforce Development (DWD) whether the assaults were compensable under worker's compensation. In addition, the court ordered Keltgen's WIS. STAT. § 51.61 claims to be pled with more specificity and granted leave to file a new complaint. The court also questioned, but did not decide, whether Keltgen could maintain a worker's compensation action along with his § 51.61 claims.

¶ 9. In his amended complaint, Keltgen alleged CDC violated his rights to prompt and adequate treatment, rehabilitation and educational services appropriate for his condition under WIS. STAT. § 51.61(1)(f); to a humane psychological and physical environment within a hospital under § 51.61(1)(m); to reasonable protection of privacy under § 51.61(1)(s); and to be treated with respect and recognition of his dignity and individuality by employees of the treatment facility under § 51.61(1)(x). CDC and its insurers moved to dismiss, arguing the complaint failed to state a claim upon which relief could be granted because the specific § 51.61 claims did not apply to Keltgen for a number of reasons.

¶ 10. Before the court heard the motion, Keltgen filed another amended complaint. Keltgen added a

---

[3] Only Curtis's claims are the subject of this appeal.

claim of negligence against CDC, alleging it had a dual persona in its relationship with him. After hearing the motion, the trial court dismissed all but Keltgen's claim under § 51.61(1)(f), concluding sheltered employment was an "educational service" and Keltgen had alleged CDC violated this right by failing to stop the assaults. The court did not address the negligence claim.

¶ 11. In March 2000, a DWD administrative law judge entered an order asserting jurisdiction and finding the assaults were compensable under worker's compensation. In November, the parties settled the worker's compensation claim for $10,000.

¶ 12. CDC and its insurers then filed for summary judgment, arguing CDC did not have a dual persona in its relationship with Keltgen and that he could not maintain his action under Wis. Stat. § 51.61(1)(f) because any recovery would duplicate his worker's compensation settlement. At the summary judgment motion hearing, Keltgen conceded he would only seek damages for pain and suffering under his remaining Wis. Stat. ch. 51 claim. The court agreed with CDC that these damages would duplicate those already paid under the worker's compensation settlement. It also concluded CDC did not have a dual persona and granted CDC and its insurers summary judgment. Keltgen appeals.

## DISCUSSION

*A. Application of Wis. Stat. § 51.61*

¶ 13. We first address the parties' dispute whether Wis. Stat. § 51.61 applies to Keltgen. This statute only applies to a "patient," and therefore we must resolve whether Keltgen meets the statute's definition of this

word. This is a question of statutory interpretation that we review de novo. *State ex rel. Hensley v. Endicott,* 2001 WI 105, ¶ 6, 245 Wis. 2d 607, 629 N.W.2d 686.

¶ 14. WISCONSIN STAT. § 51.61(1) reads in relevant part:

> **Patients rights. (1)** In this section, "patient" means any individual who is receiving services for mental illness, developmental disabilities, alcoholism or drug dependency, including any individual who is admitted to a treatment facility in accordance with this chapter or ch. 48 or 55 or who is detained, committed or placed under this chapter or ch. 48, 55, 971, 975 or 980, or who is transferred to a treatment facility under s. 51.35 (3) or 51.37 or who is receiving care or treatment for those conditions through the department or a county department under s. 51.42 or 51.437 or in a private treatment facility. "Patient" does not include persons committed under ch. 975 who are transferred to or residing in any state prison listed under s. 302.01. In private hospitals and in public general hospitals, "patient" includes any individual who is admitted for the primary purpose of treatment of mental illness, developmental disability, alcoholism or drug abuse but does not include an individual who receives treatment in a hospital emergency room nor an individual who receives treatment on an outpatient basis at those hospitals, unless the individual is otherwise covered under this subsection.

¶ 15. Keltgen argues he is a patient for the purposes of WIS. STAT. § 51.61 because he was receiving "services for developmental disabilities." He points to the definition of this phrase in § 51.437(1):

> **Developmental disabilities services. (1)** DEFINITION. In this section, "services" means specialized services or special adaptations of generic services directed toward the prevention and alleviation of a devel-

opmental disability or toward the social, personal, physical or economic habilitation or rehabilitation of an individual with such a disability, and includes diagnosis, evaluation, treatment, personal care, day care, domiciliary care, special living arrangements, training, *sheltered employment,* protective and other social and socio-legal services, follow-along services and transportation services necessary to assure delivery of services to individuals with developmental disabilities. (Emphasis added.)

¶ 16. We agree with the trial court and conclude Keltgen is a "patient" under the language of WIS. STAT. § 51.437(1) and § 51.61(1). "Patient" includes people receiving services for developmental disabilities, and sheltered employment is one of these services.

¶ 17. Nonetheless, CDC argues we should not read WIS. STAT. § 51.61(1) so broadly. Instead, it contends the statute's list of four specific types of patients after the word "including" limits its application to those types of patients listed. Specifically, CDC argues these four types of patients are all either admitted, committed or transferred to treatment facilities and, because none of these actions could describe Keltgen's work at CDC, § 51.61(1) does not apply to him. CDC also points to legislative history supporting its limited interpretation. Finally, CDC contends it makes no sense to apply § 51.61 to Keltgen because the rights it affords do not make sense in Keltgen's situation. For instance, the statute gives patients the right to have visitors, send and receive mail, and engage in religious worship. CDC argues these rights make no sense in the sheltered employment context.

¶ 18. While we agree some of the rights listed in WIS. STAT. § 51.61(1) would seem to have little applica-

tion to sheltered employment,[4] the unambiguous language of the statutes requires us to conclude Keltgen was a "patient" for the purposes of § 51.61. Because of this unambiguous language, we may not resort to the statute's legislative history. *See State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986).

*B. Application of the WCA's exclusive remedy provision*

■

¶ 19. The parties next contest whether Keltgen's claims under WIS. STAT. § 51.61 are barred under the WCA's exclusive remedy provision, WIS. STAT. § 102.03(2). This statute makes worker's compensation the "exclusive remedy against the employer" when the conditions of liability under the WCA are found to exist. CDC and its insurers argue this provision bars Keltgen from pursuing his § 51.61 claims even if he meets the statute's definition of "patient." Keltgen contends the two statutes are intended to serve two separate purposes and, therefore, his claims are not barred by the exclusive recovery provision. We agree with Keltgen.

¶ 20. Keltgen relies on our supreme court's decision in *Byers v. LIRC*, 208 Wis. 2d 388, 561 N.W.2d 678 (1997). There, the court concluded the exclusive remedy

---

[4] In a note to WIS. ADMIN. CODE § HFS 94.04, Notification of Rights, the Department of Health and Family Services stated,

> **Note:** The statute does not make distinctions among types of treatment facilities when it comes to protecting patients' rights. Some rights may be more applicable to patients in inpatient facilities than to patients in less restrictive facilities such as *sheltered workshops* or outpatient clinics. When informing patients of their rights, facility directors may emphasize those rights that are most applicable to the particular facility, program or services but s. 1.61, Stats., requires notification that other rights exist and may, under some circumstances, apply in a given situation. (Emphasis added.)

provision of Wis. Stat. § 102.03(2) did not bar a claim under the Wisconsin Fair Employment Act when both claims arose from the same facts. *Id.* at 407–08. In coming to this conclusion, the court examined the purposes of the two statutes and the harms they are intended to remedy. *Id.* at 398. The court concluded because the statutes are intended to rectify two completely different work-related harms—tort claims and discrimination—the exclusive remedy provision of the WCA did not bar an employee's claim under the WFEA when the facts giving rise to the claims are the same. *Id.* at 407–08.

¶ 21. · *Byers*'s methodology is helpful in determining whether the exclusive remedy provision of the WCA prohibits a claim under Wis. Stat. § 51.61. In interpreting the two statutes, it is our duty to harmonize them in a way that will give effect to the legislature's intent in enacting both statutes. *Id.* at 395. The statutes and their legislative history are silent as to any relationship they might have, so instead we must consider the purposes of the two statutes. *Id.*

¶ 22. Addressing the relationship of the WCA and the WFEA, the *Byers* court noted, "One does not expect these two statutes to conflict with each other, yet this case appears to raise just such a conflict." *Id.* at 394. This statement is equally applicable to the WCA and Wis. Stat. § 51.61. The WCA provides a broadly applicable method for compensating persons who suffer workplace-related physical and mental injuries. *County of La Crosse v. WERC*, 182 Wis. 2d 15, 29–31, 513 N.W.2d 579 (1994). It embodies a legislative compromise between employees and employers. *Id.* Employees give up their right to pursue tort claims against their

employers for workplace-related injury in exchange for imposing strict liability on their employers. *Id.* Although the employers are strictly liable, the amount of compensation they must pay is statutorily limited. *Id.* Thus, employees are assured smaller but more certain recoveries than they might have in a tort action, and employers are freed from the risk of large and unpredictable damage awards. *Byers*, 208 Wis. 2d at 396.

¶ 23. WISCONSIN STAT. § 51.61 is part of the State Alcohol, Drug Abuse, Developmental Disabilities and Mental Health Act. The legislative policy of this Act is found in WIS. STAT. § 51.001:

> **(1)** It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care, within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.

> **(2)** To protect personal liberties, no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility.

¶ 24. WISCONSIN STAT. § 51.61 provides a number of rights for "patients" as that term is defined in the statute. WIS. STAT. § 51.61(1). The statute allows patients to recover compensatory damages, exemplary damages, attorney fees and costs for proving a violation of these rights. WIS. STAT. § 51.61(7)(a). If the person

who violates these rights acts "willfully, knowingly and unlawfully," the patient may recover greater exemplary damages, and need not suffer actual damages. WIS. STAT. § 51.61(7)(b). The statute also provides criminal penalties for violating a patient's rights. WIS. STAT. § 51.61(7m).

¶ 25. The patients' rights provision of WIS. STAT. ch. 51 and the WCA are designed to remedy distinct harms. WISCONSIN STAT. § 51.61 guarantees certain rights to persons being treated for a variety of mental health disorders and provides an enforcement mechanism for these rights. The WCA, in contrast, serves to resolve tort claims between employers and employees. We conclude that in order to give effect to both of these statutes and their purposes, the exclusive remedy provision of the WCA does not bar a claim under WIS. STAT. § 51.61 when the injuries result from the same set of facts. Although it seems unlikely these two sections will interact with any great frequency, when they do, a recovery under the WCA does not prohibit a cause of action under ch. 51.

*C. Keltgen's specific WIS. STAT. § 51.61 claims*

¶ 26. Keltgen next argues the trial court improperly dismissed most of his specific patient's rights claims. As noted, Keltgen alleged violations of his right to prompt and adequate treatment, rehabilitation, and educational services under WIS. STAT. § 51.61(1)(f); to a humane psychological and physical environment within the hospital facility under § 51.61(1)(m); to a reasonable protection of privacy under § 51.61(1)(s); and to be treated with respect and dignity by all employees of the treatment facility under § 51.61(1)(x). The trial court dismissed all but the § 51.61(1)(f) claim because it concluded Keltgen did not meet the requirements to

assert the claims. Keltgen now argues the court erroneously dismissed his claims under § 51.61(1)(s) and (x), and contends the court correctly determined he could pursue his § 51.61(1)(f) claim. He does not challenge the court's ruling on § 51.61(1)(m).

¶ 27. Looking first at the dismissed claims, we conclude the court correctly determined that Keltgen had not stated claims under WIS. STAT. § 51.61(1)(s) and (x). These sections read:

> **Patients rights. (1)** ... Except as provided in sub. (2), each patient shall:
>
> . . . .
>
> (s) Have reasonable protection of privacy in such matters as toileting and bathing.
>
> . . . .
>
> (x) Have the right to be treated with respect and recognition of the patient's dignity and individuality by all employees of the treatment facility or community mental health program and by licensed, certified, registered or permitted providers of health care with whom the patient comes in contact.

¶ 28. The trial court dismissed these claims because it determined CDC did not violate Keltgen's privacy as contemplated in WIS. STAT. § 51.61(1)(s) and because CDC did not meet the definition of a treatment facility in § 51.61(1)(x).[5] We agree.

¶ 29. A motion to dismiss for failure to state a claim tests whether the complaint is legally sufficient to

---

[5] Curtis only alleged CDC was a treatment facility.

state a claim for which relief may be granted. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997). The legal sufficiency of the complaint is a question of law that this court reviews de novo. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). In examining the legal sufficiency of the complaint, we assume that the facts alleged in the complaint are true, *see id.*, and we are concerned only with the legal sufficiency of the complaint. *See Lane v. Sharp Pkg. Sys., Inc.*, 2001 WI App 250, ¶ 15, 248 Wis. 2d 380, 635 N.W.2d 896. Thus, we will affirm an order dismissing a complaint for failure to state a claim if it appears to a certainty that no relief can be granted under any set of facts that the plaintiffs could prove in support of their allegations. *See Quesenberry v. Milwaukee County*, 106 Wis. 2d 685, 690, 317 N.W.2d 468 (1982).

¶ 30. In his complaint, Keltgen alleges the assaults occurred in the restroom where he had gone to use the toilet and, therefore, his right to privacy in the restroom was violated. We disagree. The assaults did not occur because CDC failed to protect Keltgen's privacy in the restroom; they occurred because CDC failed to protect his *safety* in the restroom. Keltgen argues his complaint states "sufficient facts to support an inference that an effective system to monitor Giles Smith would have protected Keltgen by keeping Giles Smith away from him in the restroom where the assaults occurred." Keltgen does not explain, however, how CDC's failure to implement this monitoring system or otherwise protect Keltgen violated his right to privacy. Keltgen places too much emphasis on the statute's use of the word "toileting" and the fact the assaults occurred in the restroom. As CDC points out, had Keltgen been assaulted in the stairway, under his

argument, his rights under this section would not have been violated. CDC did not violate Keltgen's right to privacy under Wis. Stat. § 51.61(1)(s) when it failed to protect him from the assaults.

¶ 31. Nor does Keltgen's complaint state a claim under Wis. Stat. § 51.61(1)(x). This section gives patients at treatment facilities the right to "be treated with respect and recognition of the patient's dignity and individuality" by the facility's employees. The trial court dismissed this claim because it concluded CDC was not a treatment facility. We agree.

¶ 32. Wisconsin Stat. § 51.01(19) defines "treatment facility" as "any publicly or privately operated facility or unit thereof providing treatment . . . of . . . developmentally disabled persons." Under Wis. Stat. § 51.01(17), treatment "means those psychological, educational, social, chemical, medical or somatic techniques designed to bring about rehabilitation of a . . . developmentally disabled person." The trial court concluded Keltgen's sheltered employment at CDC did not constitute rehabilitation, and therefore, CDC was not a treatment facility and Keltgen could not bring the § 51.61(1)(x) claim.

¶ 33. Rehabilitation includes techniques that "ameliorate impairments and facilitate an individual's capability to function." *In re Athans*, 107 Wis. 2d 331, 336, 320 N.W.2d 30 (Ct. App. 1982). Rehabilitation is not the same as habilitation, which includes services that "assist an impaired person's ability to live in the community." *Id.* Habilitation is a concept frequently associated with the long-term care of the developmentally disabled, and is used in this sense in Wis. Stat. § 51.437(1). *In re C.J.*, 120 Wis. 2d 355, 360 n.6, 354 N.W.2d 219 (Ct. App. 1984). A practical definition of

542

habilitation would include eating, dressing, hygiene, minimum social skills and such other things that facilitate personal maintenance and functioning. *Id.* at 360. In *C.J.*, we noted a list of activities in a Department of Health, Education, and Welfare definition of habilitation included sheltered employment, and that this listing reinforced the concept of habilitation we used there. *See id.* at 360 n.5. Based on this analysis, we conclude Keltgen's sheltered employment constituted habilitation rather than rehabilitation and therefore CDC cannot be considered a treatment center for the purposes of Wis. STAT. § 51.61(1)(x).

■■

¶ 34. We agree with the trial court's decision that Keltgen's complaint stated a claim under Wis. STAT. § 51.61(1)(f). This section gives patients the right to "receive prompt and adequate treatment, rehabilitation and educational services appropriate for his or her condition." The trial court concluded Keltgen's allegation that his program at CDC intended to "upgrade the employment skills of all participants" constituted an educational program. We agree. Upgrading the employment skills of an employee certainly involves education.

¶ 35. CDC argues the legislature must have intended different definitions for "sheltered employment" and "educational services" because it chose to use two separate phrases. This, however, conflicts with the definition of "sheltered employment services" found in Wis. ADMIN. CODE § HFS 61.40, which reads, in part, "Sheltered employment programs shall include sheltered employment services or work activity services and may include the additional developmental disabilities services of . . . education." Sheltered employment may include educational programs. The legislature did not intend the definitions to be mutually exclusive and

543

Keltgen's complaint states a claim that CDC deprived him of his right to prompt and adequate educational services.

*D. Double recovery*

¶ 36. We next address Keltgen's argument the trial court erred when it determined any recovery for his remaining Wis. Stat. ch. 51 claim would duplicate the damages he had received for his worker's compensation settlement. Specifically, Keltgen argues the WCA only compensates for economic injuries and he is seeking recovery for posttraumatic stress unrelated to his economic injuries. Therefore, Keltgen argues, there is no chance of a double recovery and the trial court erred when it granted CDC summary judgment. We disagree.

¶ 37. We review the grant or denial of a summary judgment de novo, and we apply the same standard as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 38. Keltgen contends any recovery for pain and suffering he would have under his Wis. Stat. § 51.61(1)(f) claim would not duplicate the WCA recovery because the WCA award only compensates his pain and suffering related to his economic injuries. He relies on our supreme court's statement that "[n]o allowance can be made in a compensation award for physical or mental suffering, however acute, which does not interfere with earning capacity." *Shymanski v. Industrial Comm'n*, 274 Wis. 307, 314, 79 N.W.2d 640 (1956).

Keltgen argues his WCA recovery only compensates him for the pain and suffering he experienced as a result of his economic harms and he should therefore be able to recover for his other pain and suffering under the § 51.61(1)(f) claim.

¶ 39. We conclude, however, that Keltgen's pain and suffering resulting from the assaults was compensated by his WCA recovery and, therefore, further recovery would be duplicative. "Pain and suffering as a result of a work-related injury clearly flow from that injury." *Threshermens Mut. Ins. Co. v. Page*, 217 Wis. 2d 451, 467, 577 N.W.2d 335 (1998). In *Page*, our supreme court determined pain and suffering was compensable through WCA recoveries, despite not being specifically enumerated by the Act. *Id.* The court noted the degree of pain sustained by an injured worker "is certainly a factor in the determination of the level of disability and thus the disability payments accorded the worker." *Id.* at 467–68.

¶ 40. Further, the definition of "injury" in WIS. STAT. § 102.01(2)(c) includes "mental or physical harm." Keltgen is claiming he suffered posttraumatic stress as a result of the attacks, which resulted in weight loss and behavioral and mood changes. We conclude this meets the definition of mental harm. In *Swiss Colony, Inc. v. ILHR Dept.*, 72 Wis. 2d 46, 240 N.W.2d 128 (1976), the supreme court concluded an employee's claims for emotional distress, insomnia, exhaustion, depression and weight loss were within a WCA recovery. *Id.* at 51. The employee suffered a mental breakdown as a result of her increasing workload, long hours, and being subjected to a critical and berating attitude of a co-worker. *Id.* at 51–53. The court upheld the department's finding

that these injuries were caused by the work stresses and compensable by the WCA.[6]

¶ 41. Similarly, Keltgen's posttraumatic stress claims are within the scope of compensable harms under the WCA. While the causes of the employee's claim in *Swiss Colony* were her working conditions as opposed to sexual assault, it is undisputed that the assaults were an "accident" for purposes of the WCA. *See* Wis. Stat. § 102.01(2)(c); *Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 264, 468 N.W.2d 1 (1991) (an intentionally inflicted injury, unexpected and unforeseen by the injured party is an accident for purposes of the WCA). Keltgen's posttraumatic stress arose because of these assaults and was compensated by his worker's compensation settlement.

¶ 42. Therefore, allowing Keltgen to recover for pain and suffering under Wis. Stat. § 51.61(1)(f) would result in a double recovery for the pain and suffering already compensated by his WCA settlement. While we acknowledge Keltgen's argument that the WCA recovery has not made him whole, we must reject this claim because Keltgen agreed to the settlement. This recovery compensated him for the pain and suffering that arose as the result of the attacks, and any further claim would lead to a double recovery.

---

[6] At the time *Swiss Colony, Inc. v ILHR Dept.*, 72 Wis. 2d 46, 240 N.W.2d 128 (1976), was decided, the mental injury was only compensable if it "resulted from a situation of greater dimensions than the day-to-day mental stresses and tensions which all employees must experience." *Id.* at 51. Although this language has since been removed, our reliance on *Swiss Colony* is for the purpose of demonstrating the types of injuries compensable by the WCA. We conclude Curtis's claims are within the current definition of injury as well.

*E. Dual persona*

¶ 43. Finally, we reject Keltgen's claim that CDC had a dual persona as Keltgen's employer and health care provider and, therefore, he should be allowed to maintain a negligence claim against CDC. The "dual persona" doctrine is an exception to the exclusive remedy provision of the WCA. *Henning v. General Motors Ass'y Div.*, 143 Wis. 2d 1, 7, 419 N.W.2d 551 (1988). Under this doctrine, " '[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.' " *Id.* at 15. The dual persona exists where the duality is "firmly entrenched in common law or equity" or where the duality is one created by modern statute. *Id.* at 19. A separate capacity or theory of liability is not sufficient to establish a dual persona. *Schweiner v. Hartford Acc. & Indem. Co.*, 120 Wis. 2d 344, 352–53, 354 N.W.2d 767 (Ct. App. 1984).

¶ 44. Keltgen argues because CDC acted both as his employer and as his developmentally disabled service provider, it possessed a dual persona. He contends the dual persona is created by statute, specifically the statutes establishing the statewide system of services for the developmentally disabled; those allowing counties to provide the services through contracts with private entities; and the wage law exemptions provided to these entities. Keltgen maintains CDC's two roles are so different that they amount to a dual persona. We disagree.

¶ 45. Under the dual persona doctrine, the employer's second role must be so unrelated to its role as an employer that it constitutes a separate legal person. *Henning*, 143 Wis. 2d at 15. Here, CDC's roles are related. In fact, they appear so intertwined it would be difficult to tell what responsibilities each role was obligated to meet for Keltgen. His sheltered employment at CDC was the services he was receiving as a developmentally disabled person. The two roles CDC played are so related they amount to one role. CDC did not have a dual persona in its relationship with Keltgen.

*By the Court.*—Judgment affirmed.