James O. Buros, Plaintiff-Appellant,
v.
Dairy Farmers of America, XYZ Insurance Company, Robert Streeter, Dan Ellefson, Bruce Hemmersbach, Silas Howell, Daniel L. Lepke and Ronald Townsend, Defendants-Respondents.
No. 04-1017.
Court of Appeals of Wisconsin.
Opinion Filed: December 23, 2004.
Before Deininger, P.J., Dykman and Higginbotham, JJ.
¶1 PER CURIAM.
James Buros appeals a directed verdict dismissing his multi-claim civil action against Dairy Farmers of America and its insurer (collectively, DFA), as well as a number of individual milk haulers. We agree with the trial court that the evidence Buros presented at trial was insufficient to establish key elements on each of his claims, and we therefore affirm.

BACKGROUND
¶2 In 1995, Buros paid DFA's predecessor[1] $5,000 for a milk route franchise giving Buros the exclusive right to haul milk to the dairy's plant from the dairy's then-existing suppliers within a specified geographic area. Buros also bought a truck and milk tank at that time. The dairy loaned Buros the money for the entire purchase, taking a security interest in the truck, tank, milk route, and the milk hauling income. It then deducted his installment payments from what it owed him for milk deliveries. Over the next five years, Buros expanded his milk hauling business by buying several more trucks, tanks, and milk routes from various sources, and the dairy financed most of those purchases as well.
¶3 Although the testimony was indirect at best, the inferences most favorable to Buros are that each of the milk routes he purchased may have originated from a similar contractual agreement with DFA or one of its predecessors, and that such agreements may have been transferable by industry standards. That is, it appears that milk haulers in the area routinely bought and sold their routes to one another, and the dairy generally honored the rights of the new route owners, going so far as to deduct franchise payments from a new owner's checks to send to a prior franchise owner. There was no evidence presented as to what conditions, if any, would permit the dairy to terminate franchise rights which it had previously sold, either under the terms of any of the milk route contracts at issue or general industry standards.
¶4 Despite refinancing several times, Buros struggled to meet his expenses, and eventually began using the money he withheld from his employees' wages for tax purposes to make the payments on his trucks. Although Buros was apparently not behind in any of his payments to DFA, DFA became concerned when it learned about Buros' tax problems. Eventually, DFA unilaterally reassigned all of Buros' routes to other milk haulers, without giving any compensation to Buros, notwithstanding any contractual route agreements that may have been in effect. None of the other milk haulers paid either DFA or Buros for the right to service the routes taken from Buros. Deprived of his milk hauling income, Buros defaulted on his payments on the trucks and tanks, as well as installment payments he was still making on one of the milk routes he had purchased from another hauler.
¶5 Buros filed suit against DFA and the individual milk haulers who had taken over his milk routes, alleging claims of tortious interference with contract, conspiracy and unjust enrichment. The trial court directed a verdict against Buros following the close of his case at trial, and he now appeals.

DISCUSSION

Jurisdiction
¶6 As a preliminary matter, DFA contends this court lacks jurisdiction over the appeal because the notice of appeal states that Buros is appealing from the directed verdict order entered on March 10, 2003, and that order was not final until the trial court decided a pending motion on attorney fees and costs on March 12, 2004. See WIS. STAT. RULE 809.10(4) (2001-02)[2] (limiting our jurisdiction to final judgments or orders). The notice of appeal also went on to cite the final order entered on March 12, 2004, however. We are therefore satisfied that the notice of appeal was sufficient to invoke this court's jurisdiction over the matter.

Standard of Review
¶7 A trial court may direct a verdict when "the court is satisfied that, considering all credible evidence in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." Haase v. Badger Mining Corp., 2004 WI 97, ¶15, 274 Wis. 2d 143, 682 N.W.2d 389 (citation omitted). Because the trial court is in the best position to judge the weight and relevancy of the evidence, we will not set aside its decision to dismiss for insufficient evidence unless the record reveals that the trial court was "clearly wrong" about the existence of credible evidence to support the claim. Id., ¶17 (citation omitted).

Claim for Tortious Interference With Contract
¶8 In order to establish a claim for tortious interference with a contract a plaintiff must show that: (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship or induced the third party to breach the contract; (3) the interference was intentional; (4) there was a causal connection between the interference and damages suffered by the plaintiff; and (5) the defendant was not justified or privileged to interfere. Dorr v. Sacred Heart Hosp., 228 Wis. 2d 425, 456, 597 N.W.2d 462 (Ct. App. 1999).
¶9 Although Buros does not specify the contract or contracts he believes were tortiously interfered with, the only contracts to which he could logically be referring would be any franchise agreements he had obtained either directly from the dairy or from other milk haulers who may have originally obtained them from the dairy, granting Buros the right to haul milk for the dairy's customers along certain routes. The alleged interferors would then be each of the individual milk haulers who took over the dairy's customers along those routes.
¶10 There was uncontroverted evidence, however, that a representative of the dairy contacted the other milk haulers and asked them to take over portions of Buros' routes, based on the dairy's own concerns. There was no credible evidence that any of the other milk haulers took any action to induce the dairy's decision to reassign the routes. Thus, if there was any breach of a franchise contract, it was initiated by the dairy itself. Since a party cannot interfere with its own contract, see Wausau Med. Ctr., S.C. v. Asplund, 182 Wis. 2d 274, 297, 514 N.W.2d 34 (Ct. App. 1994), it was not clearly wrong for the trial court to dismiss Buros' tortious interference claim for lack of evidence.

Conspiracy Claim
¶11 In order to state a claim for damages under a civil conspiracy theory, the complaint must allege: "(1) The formation and operation of the [civil] conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." Lane v. Sharp Packaging Sys., Inc., 2001 WI App 250, ¶21, 248 Wis. 2d 380, 635 N.W.2d 896 (citation omitted). The conspiracy element requires a "combination of two or more persons by concerted action to accomplish some unlawful purpose or to accomplish by unlawful means a purpose not in itself unlawful." Winslow v. Brown, 125 Wis. 2d 327, 330, 371 N.W.2d 417 (Ct. App. 1985) (citation omitted). An act need not be criminal to be unlawful; the violation of a civil right may be sufficient. Cranston v. Bluhm, 33 Wis. 2d 192, 198, 147 N.W.2d 337 (1967).
¶12 Buros claims that WIS. STAT. § 134.01 makes it unlawful for two or more persons to act together to maliciously injure another person's trade, and that that is what happened here. The credible evidence presented at trial, however, would not support a finding of malice on the part of any of the defendants. Malice requires that a conspirator harmed someone "for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired." Maleki v. Fine-Lando Clinic Chartered, S.C., 162 Wis. 2d 73, 87-88, 469 N.W.2d 629 (1991) (citation omitted). Here, it was plain from the testimony and letters entered into evidence that the dairy was acting to protect its customers because it did not believe that Buros would be able to sustain his operation, given his tax problems and other debts. We cannot see how the reassignment of Buros' milk routes under those circumstances constituted an unlawful purpose. Nor do we see any evidence showing that the dairy or milk haulers employed any illegal means such as fraud or coercion to achieve that end. Therefore, we conclude it was not clearly wrong for the trial court to dismiss the conspiracy claim for lack of evidence.

Unjust Enrichment Claim
¶13 To recover on a claim of unjust enrichment, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under circumstances that makes its retention inequitable." Tri-State Mech., Inc. v. Northland Coll., 2004 WI App 100, ¶14, 273 Wis. 2d 471, 681 N.W.2d 302.
¶14 Here, the evidence does not show that Buros himself conferred any benefit upon any of the other milk haulers, since it was the dairy who reassigned the routes to them. Buros could be said to have conferred a benefit upon the dairy by directly paying it at least two franchise fees for milk routes. However, because those fees were paid pursuant to written agreements, the equitable doctrine of unjust enrichment is not available. See Greenlee v. Rainbow Auction/Realty Co., Inc., 202 Wis. 2d 653, 671, 553 N.W.2d 257 (Ct. App. 1996). Rather, any potential remedy would lie in contract. Therefore, the trial court properly dismissed the unjust enrichment claims as well.
By the Court.  Order affirmed.
NOTES
[1] Because the parties treated DFA and its predecessor Mid-America Dairymen interchangeably at trial, we will do the same here, referring to both entities as the dairy.
[2] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.